# MURRAY *v.* LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 718.   Argued and submitted April 16, 1896.—Decided May 18, 1896.

Congress has not, by Rev. Stat. § 641, authorized a removal of a prosecution from a state court upon an allegation that jury commissioners or other subordinate officers had, without authority derived from the constitution and laws of the State, excluded colored citizens from juries because of their race.  Said section does not embrace a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence.  For such denials arising from judicial action after a trial commenced the remedy lies in the revisory power of the higher courts of the State, and ultimately in the power of review which this court may exercise over their judgments whenever rights, privileges or immunities claimed under the Constitution or laws of the United States are withheld or violated.  The denial of, or inability to enforce in the judicial tribunals of a State, rights secured by any law providing for the equal civil rights of citizens of the United States, to which § 641 refers, and on account of which a criminal prosecution may be removed from a state court, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the constitution or laws of the State, rather than a denial first made manifest at and during the trial of a case.

*Neal* v. *Delaware,* 103 U. S. 370, and *Gibson* v. *Mississippi,* 162 U. S. 565, affirmed to the above points.

Rulings of the court below refusing writs of *subpœna duces tecum* held to work no injury to defendant.

The state court, on the trial of the plaintiff in error for murder, permitted to be read in evidence the evidence of a witness taken in the presence of the accused at a preliminary hearing, read to and signed by the witness, the prosecuting officer alleging that the witness was beyond the jurisdiction of the court, and his attendance could not be procured.  The bill of exceptions to its allowance was not presented to the trial judge for signature until two weeks after sentence, after refusal of a new trial, and after appeal.  The record does not disclose the nature or effect of the

testimony so admitted. *Held*, that there is nothing in this record which would authorize this court to convict the Supreme Court of Louisiana of error in that behalf.

IN October, 1894, in the Criminal District Court for the parish of Orleans, State of Louisiana, an indictment for murder was found against one Jim Murray, alias Greasy Jim. On December 13, 1894, the accused was arraigned, pleaded not guilty, and was remanded for further proceedings.

On January 10, 1895, Thomas F. Maher, as attorney for the accused, challenged the grand jury on the ground that it was not a legally constituted body, because the jury commissioner had discriminated against the prisoner on account of his race and color, by having excluded from the venire from which the grand jury was selected all colored men or negroes, which action was charged to be in conflict with the constitution and laws of Louisiana and with the Constitution of the United States.

To procure evidence to sustain his said challenge, the accused by his counsel asked for a *subpœna duces tecum*, directed to Francis C. Zachaire, register of the voters of the parish of Orleans, calling on him to furnish the total number of voters registered in the parish; the total number of white voters registered; the total number of colored voters; the total number of whites and of colored voters who could sign their names at the closing of the registration office of the parish previous to the last Congressional election held on November 6, 1894. Also for a *subpœna duces tecum*, addressed to the jury commissioners of the parish, commanding them to furnish the court, on the trial of the challenge to the grand jury, the names and residences of thirty-five hundred citizens who appeared before them in the month of September, 1894, for qualification as jurors, and the names and residences of the one thousand citizens whom they qualified and placed in the jury wheel, from which the grand jury, which found the indictment in the present case, was drawn. These motions for subpœnas were endorsed by the minute clerk as follows: "Filed subject to orders."

On February 2, 1895, the challenge to the grand jury came on to be heard.

Apparently to save time, the State's attorney offered in evidence and as part of the present record the evidence taken before another section of the court, in the case of the *State of Louisiana* v. *George Heard,* on a challenge to the grand jury, in which similar grounds of challenge had been made. The counsel for the accused, who had also acted as counsel for George Heard, made no objection to the filing of this evidence, but himself filed, as part of the present record, the assignments of error and the bills of exceptions filed by him in the other case.

Among other things there appeared in this evidence in the case of Heard, and was read to the court in the present case, the return of the registry clerk, showing a statement of registered voters of the parish of Orleans, after the general election of November, 1892, viz.: Total number of voters, 59,262, of whom there were native white who sign, 35,382; native born who make their mark, 4571; foreign white who sign, 8283, and who make their mark, 1672; colored who sign, 5431, and who make their mark, 4223. This admitted record contained the testimony of several deputy sheriffs, who served jury summons, and which went to show that few persons of color were so summoned; also the testimony of the three jury commissioners, who testified that colored persons were summoned to appear before the commissioners to qualify as jurors, and that there were names of colored persons in the jury wheel from which this grand jury was drawn. They testified that in taking names from the registration list the commissioners selected them with reference to their qualifications as jurors, without regard to color; that a great many colored men were summoned, and there was no discrimination against colored men.

The court held that the plaintiff's challenge was not sustained by the evidence; that while it was undeniable that the exclusion from the general service of all people of the African race on account of their color would be an unlawful abridgment of the rights of such citizens, yet that the evidence did

not disclose such a case, but showed that the general service was not exclusively made up of the names of white persons, and that it was clearly established that colored people were not excluded on account of their race or color. The challenge was overruled. To which action of the court the accused by his counsel took several exceptions, which were duly allowed and signed.

The defendant then by his attorney made a motion to quash the indictment, upon the allegation that act No. 170 of the acts of 1894, under the provisions of which the grand jury which indicted the accused was organized, was unconstitutional because it did not conform to the provisions of the state and Federal Constitutions, which provide that there shall be no discrimination on account of race, color or previous condition of servitude. The motion to quash was overruled, and thereupon the accused filed an application for the removal of the cause to the Circuit Court of the United States. The allegations of the petition to remove stated the action of the court in overruling the challenge of the grand jury, and that there was a local prejudice against the accused as a colored man charged with having murdered a white man, which would prevent a fair and impartial trial in any state court. This petition was filed in the state court on February 19, 1895. On February 28, 1895, the trial was commenced, and was so proceeded in that on March 1, 1895, the jury found a verdict of guilty.

On March 7, 1895, a motion for a new trial and a motion in arrest of judgment were filed. In a petition accompanying these motions it was made to appear that on February 26, 1895, the accused had filed in the Circuit Court of the United States a petition for a writ of *habeas corpus* and for an injunction forbidding the state court to proceed. No action in the matter appears to have been taken by the United States Circuit Court.

The motion for a new trial and the motion in arrest of judgment were refused, and on March 7, 1895, sentence of death was pronounced against the accused. Certain bills of exceptions to the charge and rulings of the court were

signed, and an appeal to the Supreme Court of Louisiana was allowed. On June 3, 1895, the Supreme Court affirmed the judgment of the trial court, and by a writ of error that judgment of the Supreme Court of Louisiana was brought to this court.

*Mr. Thomas F. Maher* for plaintiff in error.

*Mr. M. J. Cunningham,* Attorney General of the State of Louisiana, and *Mr. Alexander Porter Morse* for defendant in error submitted on their brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Several of the assignments of error bring into question the correctness of the judgment of the Supreme Court of the State of Louisiana affirming the action of the trial court in proceeding with the trial in disregard of a petition by the accused to have the cause removed into the Circuit Court of the United States upon the allegation that the petitioner was a negro, and that persons of African descent were, by reason of their race and color, excluded by the jury commissioners from serving as grand and petit jurors.

To dispose of such assignments it is sufficient to cite *Neal* v. *Delaware,* 103 U. S. 370, and *Gibson* v. *Mississippi,* 162 U. S. 565, decided at the present term, in which, after careful consideration, it was held that Congress had not, by section 641 of the Revised Statutes, authorized a removal of the prosecution from the state court upon an allegation that jury commissioners or other subordinate officers had, without authority derived from the constitution and laws of the State, excluded colored citizens from juries because of their race; that said section did not embrace a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence; that for such denials arising from judicial action after a trial commenced the remedy lay in the revisory power of the higher courts of the State, and ultimately in the power of review which this court

may exercise over their judgments whenever rights, privileges or immunities claimed under the Constitution or laws of the United States are withheld or violated; and that the denial or inability to enforce, in the judicial tribunals of the States, rights secured by any law providing for the equal civil rights of citizens of the United States, to which section 641 refers, and on account of which a criminal prosecution may be removed from a state court, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the constitution or laws of the State, rather than a denial first made manifest at and during the trial of the case.

The petition for removal complained of the acts of the jury commissioners in illegally confining their summons to white citizens only, and in excluding from jury service citizens of the race and color of the petitioner, but did not aver that the jury commissioners so acted under or by virtue of the laws or constitution of the State; nor was there shown, during the course of the trial, that there was any statutory or constitutional enactment of the State of Louisiana which discriminated against persons on account of race, color or previous condition of servitude, or which denied to them the equal protection of the laws.

Other assignments ask our attention to errors alleged to have been committed in the course of the trial. It is claimed that the rights of the accused were disregarded in the proceedings under his challenge to the grand jury. The principal matters complained of seem to be the action of the court in endorsing on the challenge to the grand jury the words "filed subject to argument on face of papers;" and on the motion for *subpœna duces tecum*, directed to the registrar of voters, the words "filed subject to orders," and on the motion for *subpœna duces tecum* addressed to the jury commissioners the words "filed subject to orders;" and it is claimed that such indorsements were irregular, deprived the accused of opportunity to sustain the allegations contained in his written challenge and deprived him of due process of law.

The indorsements or orders made upon the various papers

appear to us to have only signified that the court withheld immediate action on the motions. They evidently were not treated by the court as concluding the accused, because the record shows that subsequently the hearing of the challenge was proceeded in, and that evidence was adduced by both the State and the accused.

An exception was taken to the refusal of the court to grant what was termed a *subpœna duces tecum,* directed to Francis E. Zacharie, registrar of voters. The reason given by the court was that the so called writ of *subpœna duces tecum* did not purport to be such, did not describe or refer to any paper or document which was in the possession of the registrar, and which the defendant required. The court was of opinion that either the defendant should have specified the books or documents required ; or, if he wished information from the registrar, he should have subpœnaed him to attend and testify. We perceive no error in this action.

Exception was likewise taken to the refusal of the court to grant a writ of *subpœna duces tecum* on the jury commissioners, not commanding them to produce specified books or papers, but that they should furnish the names and residences of the 3500 citizens whom they had summoned to qualify as jurors. The court thought that the writ asked for was not a writ of *subpœna duces tecum,* and that the defendant, if he desired information from the commissioners, should have subpœnaed them to attend as witnesses. Besides, the defendant had the advantage of their testimony by consenting to the use of their evidence in the *Heard case.*

At all events, no injury was suffered by the defendant by the refusal of the court to grant him the writs prayed for, because the evidence he desired to get did not tend to show that the rights of the accused were denied by the constitution or laws of the State, and therefore did not authorize the removal of the prosecution from the state court.

A more serious question is presented by an exception to the action of the trial court in permitting to be read the evidence of one King Jones, which had been taken in the presence of the accused in open court at a preliminary hearing, and read

to and signed by the witness. The reason given by the district attorney for the use of the deposition was that after due diligence he was unable to procure the attendance of the witness, who was not within the jurisdiction of the court.

The record, however, discloses that the bill of exceptions to the allowance of this evidence was not presented for signature to the judge until March 14, 1885, two weeks after the sentence was rendered, and after a new trial had been refused and an appeal allowed. No error was assigned, in the Supreme Court of Louisiana, to the admission of this evidence, nor is it made the subject of assignment in this court. Neither does the record disclose the nature or effect of the testimony so admitted. In the absence of a bill of exceptions, disclosing at least the substance of the evidence, and of an assignment of error, we are permitted to suppose that the evidence was trivial, and that it did no injury to the defendant. We certainly have nothing in this record which would authorize us to convict the Supreme Court of Louisiana of any error in that behalf.

There was a motion to quash the indictment on the ground that act No. 170 of 1894, under the provisions of which the grand jury was drawn, was unconstitutional in that it was alleged to be a local or special law, and not enacted according to a constitutional requirement of previous public notice. This motion was refused by the trial court, and its action was approved by the Supreme Court of the State. Error is assigned in this court, but no Federal question is thereby presented.

Nor can we perceive any merit in the assignment which avers that this act No. 170 is in conflict with the Fourteenth Amendment to the Constitution of the United States, because such law is alleged to confer on the jury commissioners of the parish of New Orleans judicial powers in the selection of citizens for jury services. It is not pretended that the accused was subjected to any other or different treatment, in respect to that feature of the statute, than that which prevails in other cases, or on the trial of white citizens.

A careful inspection of this record has failed to disclose any

particular in which the accused was deprived of any right or immunity secured to him under the.laws or Constitution of the United States, and the judgment of the Supreme Court of Louisiana is accordingly

*Affirmed.*