[Crim. No. 7217. First Dist., Div. One. Dec. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER J. TAYLOR, Defendant and Appellant.

COUNSEL

Morris D. Bobrow, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Walter J. Taylor was found guilty by a jury of violating Penal Code section 496 (receiving stolen property) and Penal Code section 12021 (possession of a concealable firearm by one previously convicted of a felony). ▮ He acted as his own attorney at the trial. His appeal is from the nonappealable "verdict" which we shall treat (as obviously intended) as an appeal from the judgment imposing two concurrent terms in the state prison. (See *In re Gonsalves,* 48 Cal.2d 638, 642-643 [311 P.2d 483]; *People* v. *Walker,* 215 Cal.App.2d 609, 611 [30 Cal.Rptr. 440]; *People* v. *Burroughs,* 200 Cal.App.2d 629, 634 [19 Cal.Rptr. 344].)

Following the substantial evidence rule we state the evidence which tends to support Taylor's conviction. (See *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)

In the predawn of the morning of August 21, 1967, a police officer was driving an unmarked vehicle in an area where many burglaries had recently occurred. He saw a man's head behind some parked automobiles directly in front of an apartment building at 2404 Fulton Street in Berkeley. The person suddenly "darted" across the street and disappeared in a direction away from the policeman. He "had a large amount of hair" and was dressed in dark clothing. The policeman pursued the man while at the same time calling for assistance on the radio. However, visual contact with the fleeing figure was lost.

Ten minutes later in the general area toward which the fleeing person had gone the policeman saw one of the responding officers apprehend defendant. Taylor said he was engaged in "road work." He "fit the description of the person" who had run across Fulton Street. He had bushy hair. He was wearing two pairs of trousers, the outer of which was black; and a multi-colored sweater was concealed beneath a black long-sleeved sweater. Asked for identification, Taylor stated it was in his automobile, to which he pointed. The men walked to the car where Taylor produced a driver's license. In the meantime other officers arrived at the scene. Checking over the police radio the officers learned that Taylor was presently on parole and that he had been arrested for burglaries and other offenses in the past. They also learned that a burglary had been committed shortly before at 2404 Fulton Street. Taylor was placed under arrest "for investigation of burglary."

The suspect's automobile was then searched. In the trunk, in a bag, the police found a gun belt with an empty holster, a knife belt and sheath containing a knife, and some .22 calibre ammunition, both expended and unexpended. Also found in the car was a Nikon camera. The property was left in the vehicle which was then towed to a garage and impounded. At the garage the above described property was later removed by the police.

About an hour and a half after Taylor's arrest a fully loaded .22 calibre Ruger revolver was found at a point one block distant from where he was first questioned by the police. From an examination of the revolver and the expended .22 calibre shells found in Taylor's automobile a criminalist of the California Bureau of Criminal Identification and Investigation concluded that the shells had been fired from the revolver.

Another witness testified that the Ruger revolver and the gun holster, knife, and sheath removed from Taylor's car had been stolen from his apartment in a burglary in March of 1967. Still another stated that the Nikon camera found in the car had been taken in a burglary of his apartment. However, the revolver alone was the subject of the receiving stolen property charge of which Taylor was convicted.

Taylor first contends that there was no substantial evidence that he had "possessed" the revolver, or that it had been stolen by someone other than himself, or that he knew it was stolen. The contentions are without merit.

The evidence that the subject revolver had fired the expended cartridges found in Taylor's car, and the fact that it was found close to the point where he was apprehended by the police, abundantly supports the jury's finding that he had "possessed" the stolen gun. (See *People* v. *Hilliard*, 221 Cal.App.2d 719, 723-724 [34 Cal.Rptr. 809].) Taylor's knowledge that the gun was stolen could reasonably be inferred from his apparent flight, his discard of the weapon upon seeing the police officer,

the circumstances of his arrest including the wearing of outer clothing which could easily be removed, thus allowing him to change his appearance, and his possession of other, and separately stolen, property, the Nikon camera. ■ "Possession of stolen property, accompanied by suspicious circumstances, will justify an inference that the property was received with knowledge that it had been stolen." (*People* v. *Malouf,* 135 Cal.App.2d 697, 706 [287 P.2d 834].) ■ The jury could reasonably have concluded that someone other than Taylor had stolen the revolver; the burglary in which it was taken had occurred about six months before Taylor's arrest. ■ In establishing the offense of receiving stolen property affirmative proof that the defendant himself is not the thief is not required. (*People* v. *Williams,* 253 Cal.App.2d 952, 958 [61 Cal.Rptr. 238]; *People* v. *Hansard,* 245 Cal.App.2d 691, 696 [53 Cal.Rptr. 918]; *People* v. *Marquez,* 237 Cal. App.2d 627, 633-637 [47 Cal.Rptr. 166].) And even the thief may be guilty of violating Penal Code section 496 where, as here, he is additionally charged with "concealing and withholding" the stolen property, and the facts indicate such concealing and withholding to be completely divorced from the initial concealment following the theft. (*People* v. *Williams, supra,* 253 Cal.App.2d 952, 958-959.)

■ Taylor next contends that the search of his automobile at the time of his arrest was violative of Fourth and Fourteenth Amendment standards. This contention is also without merit. The evidence established reasonable cause for Taylor's arrest for burglary. The search of his automobile was made at the place and time of, and as an incident to, that arrest. Having reasonable cause to believe that Taylor had committed a burglary, it was reasonable for the police to conclude that the vehicle, which was immediately before them, might contain stolen property. The search was constitutionally proper. (See *People* v. *Williams,* 67 Cal.2d 226, 229 [60 Cal. Rptr. 472, 430 P.2d 30]; *People* v. *Webb,* 66 Cal.2d 107, 124 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *McBride,* 268 Cal.App.2d 824, 830 [74 Cal.Rptr. 375].) We have considered the possible effect of the recent case of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], restricting the scope of a warrantless search of a private dwelling as an incident to a valid arrest. It is doubtful if *Chimel* would apply to the search of an easily removable automobile under the circumstances here. And in any event since the search here preceded the announcement of the *Chimel* rule, that case would be inapplicable. (*People* v. *Edwards,* 71 Cal.2d 1096, 1106-1107 [80 Cal.Rptr. 633, 458 P.2d 713].)

■ While the problem is not without difficulty we reject Taylor's con-

tention that because of Penal Code section 654,[1] he may not be convicted and sentenced for two crimes covering the same act, i.e., possession of a particular gun. We are assisted to this conclusion by *In re Hayes,* 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430]. There a divided court, considering Penal Code section 654, concluded that *driving* with a suspended license (Veh. Code, § 14601) while simultaneously *driving* under the influence of intoxicating liquor (Veh. Code, § 23102) constituted two separately punishable offenses. The court distinguished between a noncriminal act (driving an automobile) which was a common element of two different criminal statutes, and two simultaneous criminal acts made punishable by law. (P. 608.) Describing "driving" as a neutral act which was a necessary element of both crimes the court said (p. 608, fn. 6): "Yet this fact does not make those neutral elements in themselves punishable or criminal, for none is by itself a complete criminal act. Thus the fortuitous identity of 'essential' neutral elements remains irrelevant for our purposes." The court concluded (p. 611): "In summation, then, section 654 of the Penal Code proscribes multiple punishment for a single 'act or omission which is made punishable' by different statutes, i.e., a single *criminal* act or omission. Since the mere act of driving is made punishable by no statute, it is not the type of act or omission referred to in section 654. The acts 'made punishable' which this petitioner committed were (1) driving with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654."

The neutral noncriminal common element of Taylor's crimes was *possession* of the .22 calibre revolver. On the other hand the acts made punishable by the respective Penal Code sections were *possession of* (receiving) *stolen property,* and *possession by an ex-convict of a concealable gun.* The public insult done by Taylor, an ex-convict, in possessing the loaded revolver was compounded by the fact that the weapon was stolen, and known by him to be stolen. As to each offense Taylor had a separate and distinguishable

---

[1]Penal Code section 654 as pertinent here provides: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

*mens rea.* It does not seem reasonable that the state should be required to indulge in the fiction that but one crime had been committed.

Following the authority and rationale of *In re Hayes, supra,* we conclude that Penal Code section 654 is inapplicable to Taylor's instant convictions and sentences.

From our reading of the record, and consideration of the cited case of *People* v. *Carter,* 68 Cal.2d 810 [69 Cal.Rptr. 297, 442 P.2d 353], we consider the contention that the trial court subjected the jury to undue pressure in reaching their verdicts to be wholly without merit.

Much emphasis is placed by Taylor on his contention that the jury which convicted him was derived from a master panel selected through an unconstitutional process.

At the trial, before the jury were selected, Taylor announced, "I am challenging the jury panel under section 1058 of the Penal Code." He then called the superior court's jury commissioner to the stand in support of his challenge. The manner in which the jury panel was selected was probed in great detail. Asked, "Why isn't the phone directory used instead of this Index to Register in selecting prospective jurors?" the commissioner replied, "The office has always used the Register of Voters which gives a much greater coverage of the county than the telephone book would supply." He admitted that the use of the Register of Voters had the effect of excluding nonvoters from jury service. An objection to Taylor's question why one not registered to vote was excluded, was sustained. The commissioner denied that a "Black Panther" would automatically be excluded from jury service. He explained why approximately one-fourth of the prospective jurors called were selected, and why some were deferred for service at a later date. Responding to questions he testified that the summoned persons themselves filled in the "affidavits" and the "multiple choice tests," and related why those papers were not mailed to their homes for completion. The reason why some persons were excluded on completion of the affidavit was explained. The question concerning who prepared the "test and affidavit" was answered by the assertion that it was the superior court judge with the participation of the bar association. Taylor pointed out the greater proportion of Caucasians on the jury list, and asked if there isn't "some type of de facto segregation" practiced. He challenged the commissioner's authority to select the panel saying, "I don't have the Code here, but I believe it states that the Board of Supervisors shall select in accordance with Sections 205 and 206 a list of men and women to serve as trial jurors in the superior court of the county." Many other questions were asked, and much other criticism indicated by Taylor concerning the selection of the master jury panel.

At the conclusion of the extended examination of the jury commissioner, Taylor announced, "Under these conditions, in light of the facts that the jury commissioner has testified to, if Your Honor is in a position to even decide this, I don't feel I can get an impartial verdict from the court at this time." The trial court thereupon denied the challenge to the panel.

Although, as noted, at the trial Taylor indicated broad disapproval of the manner in which the master jury panel was selected, on this appeal he narrows his attack solely to what he calls the "clear thinking test" given to prospective jurors. This test was prepared and given under the direction of Code of Civil Procedure sections 198, 199, 204, 204a, 204b, 204c, which mandate the jury commissioner to furnish the court with a list of "qualified" and "competent" persons. A person is competent if "in possession of his natural faculties and of ordinary intelligence and not decrepit." (Code Civ. Proc., § 198, subd. 2.) ■ The commissioner is enjoined to "diligently inquire and inform himself in respect to the qualifications" of prospective jurors. (Code Civ. Proc., § 204c.) Such a delegation of authority to a jury commissioner is constitutionally proper. (*Murray* v. *Louisiana,* 163 U.S. 101, 108 [41 L.Ed. 87, 90, 16 S.Ct. 990].) About three months after Taylors' trial as a result of a successful challenge to the panel in another case, the test of which he now complains, was discontinued.

It is established law that a challenge to a panel "must plainly and distinctly state the facts constituting the ground of challenge." (Pen. Code, § 1060; see also, *People* v. *Enwright,* 134 Cal. 527, 528 [66 P. 726]; *People* v. *Richards,* 1 Cal.App. 566, 573 [82 P. 691].)

■ Taylor's shotgun attack on the jury panel may not reasonably be deemed a compliance with section 1060. His grounds of challenge were obscure, making it difficult, if not impossible for the court to determine their basis. He has established no prejudice resulting from the manner of the jury panel's selection. It appears that the persons called for jury service at Taylor's trial contained a reasonably representative proportion of Negroes and Caucasians. And Taylor expressed satisfaction with the jury finally selected to try his case before he had exhausted his peremptory challenges. Most clearly there was no "systematic exclusion" of Negroes from the jury panel as condemned in *Coleman* v. *Alabama,* 377 U.S. 129 [12 L.Ed.2d 184, 84 S.Ct. 1178]. Accordingly no error appears in the denial of Taylor's challenge to the jury panel.

■ We find ourselves in agreement with Taylor's contention that he was erroneously adjudged to have suffered *three* prior convictions of felony.

Penal Code section 969 requires that "all known previous [felony] convictions" of a defendant must be charged. Taylor was alleged to have suffered three such convictions. He admitted *only* a conviction of burglary

in Alameda County on or about September 20, 1962; there was no proof, or jury finding, as to the others. The recital of the judgment, obviously inadvertent, that three prior convictions had been admitted or proved was accordingly error. We are not persuaded by the Attorney General's insistence that Taylor has suffered no prejudice, since adjudication of three prior convictions, instead of one, will not necessarily increase Taylor's prison term. At least one of the purposes of Penal Code section 969 is to furnish the Adult Authority with admitted or adjudicated information concerning a prisoner's criminal record, thus aiding the authority in fixing the term of imprisonment under the indeterminate sentence law. Three prior felony convictions would obviously tend to insure a longer prison term.

The superior court will modify its judgment and commitment to indicate that the only prior felony conviction admitted or proved was defendant Taylor's conviction of burglary in the Alameda County Superior Court on or about September 20, 1962; as so modified the judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 14, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 18, 1970. Peters, J., was of the opinion that the petition should be granted.