Filed 8/11/15  P. v. Franklin CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065705 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD245567) |
| ARON LAMONT FRANKLIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Affirmed.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Aron Lamont Franklin of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true the allegation that Franklin personally discharged a firearm in connection with the murder (§ 12022.53, subd. (d)). The jury also convicted Franklin of receiving stolen property (§ 496, subd. (a)) and unlawfully possessing ammunition (§ 30305, subd. (a)(1)). The jury found that Franklin committed each offense for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1).) Franklin was also charged with two counts of carrying a concealed firearm. (§ 25400, subd. (a)(2).) The jury acquitted Franklin on one count and was unable to reach a verdict on the other count.

Franklin appeals. He contends (1) the evidence does not support his conviction for receiving stolen property and (2) the evidence does not support the gang enhancement applied to his conviction for unlawful possession of ammunition. We disagree with these contentions and affirm the judgment.

FACTS

On July 19, 2012, the San Diego Police Department received a report that four individuals were handling firearms in the courtyard of an apartment complex. Members of the Lincoln Park criminal street gang were known to frequent that area. San Diego police officers, assisted by a police helicopter, responded. Using an infrared camera, a police officer in the helicopter observed the individuals standing together and then

---

[1] Further statutory references are to the Penal Code.

2

walking away separately. One of the individuals, later identified as Franklin, discarded a .45 caliber revolver after he left the group.

Police caught Franklin and detained him. Franklin is a documented member of the Lincoln Park gang. At the time of his detention, Franklin was wearing clothes indicative of the Lincoln Park gang, including green plaid shorts and a green bandana. Police detained a second individual, Glen Miller, who is also a documented Lincoln Park gang member.

Police recovered the .45 caliber revolver, and forensic analysis later revealed a mixture of DNA on the revolver to which Franklin was a possible major contributor. The chance that a person selected at random would be such a contributor was one in 12 sextillion for the Caucasian population, one in 38 quintillion for the African American population, and one in 60 sextillion for the Hispanic population. Police also recovered a .380 caliber semiautomatic handgun nearby. Franklin was a possible major contributor to the mixture of DNA recovered from that handgun as well.

The .45 caliber revolver had been stolen from the home of Lannie Hunt a month earlier. Police recovered a latex glove from Hunt's home. The glove contained a mixture of DNA, to which Joseph Singleton was a possible major contributor. Singleton is a documented member of the Lincoln Park gang. Singleton's relative, Janay Singleton, visited Franklin while he was in custody.

On January 3, 2013, Franklin shot and killed Julius Batiste, another Lincoln Park gang member, during a confrontation over a gun Batiste had stolen. The next day, police recovered the murder weapon, a 9 millimeter Springfield handgun, from a closet in an

3

apartment where Franklin lived with his girlfriend. Police also recovered a number of magazines with additional ammunition for the gun. Franklin's girlfriend told police that an older gang member, Emery Richardson, had sold Franklin the gun.

Two days after Batiste's murder, police arrested Franklin. In Franklin's pocket, police found a plastic bag with six rounds of 9 millimeter ammunition. Police also recovered Franklin's mobile phone, which had been disassembled. The mobile phone contained numerous text messages with fellow Lincoln Park gang members. One text message, which Franklin sent soon after Batiste's murder, asked Richardson for more "pasta shells," which is slang for ammunition.

At trial, among many other witnesses, a gang expert testified for the prosecution. The expert, a San Diego Police Department detective, identified Lincoln Park as a criminal street gang, explained its structure and activities, and described several violent crimes that Lincoln Park members had committed. The expert testified that violent crimes promote Lincoln Park and expand its power. The expert opined that guns are very important to the gang, and gang members carry guns for offensive and defensive reasons. The expert believed that Batiste's murder was committed for the benefit of the gang, and promoted the criminal activities of the gang, because the murder was in retaliation for a perceived slight against the gang. The expert also believed that Franklin's possession of the stolen .45 caliber revolver was committed for the benefit of the gang, and promoted the criminal activities of the gang, because it provided the gang with protection, added to the power and status of younger gang members, and allowed the gang to commit gun-related crimes.

4

DISCUSSION

I

Franklin first contends the evidence was insufficient to support his conviction for receiving stolen property, i.e., the .45 caliber revolver, under section 496, subdivision (a). That statute provides, in relevant part, as follows: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished . . . ." (§ 496, subd. (a).) "To establish guilt of the offense of receiving stolen property proof of three elements is required: the property must have been stolen, the accused must have received it in his possession, and he must have known that it was stolen." (*People v. Martin* (1973) 9 Cal.3d 687, 695 (*Martin*); *People v. Land* (1994) 30 Cal.App.4th 220, 223 (*Land*).)

"Possession of the stolen property may be actual or constructive and need not be exclusive." (*Land, supra*, 30 Cal.App.4th at p. 223.) However, "mere presence near the stolen property, or access to the location where the stolen property is found is not sufficient evidence of possession, standing alone, to sustain a conviction for receiving stolen property." (*Id.* at p. 224.) " 'Of course, the necessary additional circumstances may, in some fact contexts, be rather slight. [Citations.] It is clear, however, that some additional fact is essential.' " (*Id.* at p. 225.)

5

When possession of stolen property is established, that element "in and of itself is a factor which could assist a reasonable person in formulating a strong suspicion that the recipient knew the item was stolen." (*Martin, supra*, 9 Cal.3d at p. 696.) "Conscious possession of recently stolen property alone is insufficient to permit the inference defendant knew the property was stolen, however, 'the attributes of the possession—time, place, and manner—may furnish the additional quantum of evidence needed. [Citation.]' [Citation.] '[P]roof of knowing possession by a defendant of recently stolen property raises a strong inference of the other element of the crime: the defendant's knowledge of the tainted nature of the property. This inference is so substantial that only "slight" additional corroborating evidence need be adduced in order to permit a finding of guilt.' " (*People v. Reyes* (1997) 52 Cal.App.4th 975, 984-985; see *People v. McFarland* (1962) 58 Cal.2d 748, 754 ["Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt."].) "Knowledge that property was stolen can seldom be proved by direct evidence and resort must often be made to circumstantial evidence. However, no distinction is made between direct and circumstantial evidence in the degree of proof required." (*People v. Vann* (1974) 12 Cal.3d 220, 224.)

Our standard of review is familiar: " 'In reviewing a criminal conviction challenged as lacking evidentiary support, " 'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid

6

value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " [Citation.] The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] . . . An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*People v. Grant* (2003) 113 Cal.App.4th 579, 595; see *People v. Vann, supra*, 12 Cal.3d at p. 225.) " ' "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Moses* (1990) 217 Cal.App.3d 1245, 1251.)

Franklin does not appear to challenge the jury's conclusion that the .45 caliber revolver was stolen, and we likewise conclude the evidence supports that element of the offense. Franklin argues, however, that the evidence did not support the other two elements: possession of the revolver and knowledge that the revolver was stolen. We disagree for reasons we will explain.

As to the element of possession, the evidence showed that Franklin had actual physical possession of the revolver. Forensic analysis showed to a very high degree of likelihood that Franklin's DNA was part of the mixture of DNA found on the revolver. Video footage from the helicopter showed Franklin carrying, and then discarding, the revolver as he fled from police. While other individuals were present at the scene, and other individuals' DNA was found on the revolver, possession need not be exclusive. (*Land, supra*, 30 Cal.App.4th at p. 223.) The DNA evidence and video footage provide

7

sufficient additional facts, beyond mere access, to establish possession. (*Id.* at pp. 224-225.)

Unlike the cases Franklin cites, Franklin was not merely the passenger in a car in which stolen property was found. (See *People v. Myles* (1975) 50 Cal.App.3d 423, 429; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.) Nor are the instant circumstances analogous to the evidence the Supreme Court found insufficient in *Martin, supra*, 9 Cal.3d 687. In *Martin*, the Supreme Court reversed a conviction for receiving stolen property based on insufficient evidence that defendant possessed property that was found in the trunk of a *codefendant's* car. (*Id.* at p. 696.) Other evidence was sufficient to support the defendant's conviction for receiving stolen property based on property found in the trunk of his *own* car. (*Id.* at p. 695.) Here, the evidence showed that Franklin had direct possession of the .45 caliber revolver, which is sufficient to satisfy the element of possession for the offense of receiving stolen property.[2]

As to the element of knowledge, the evidence supports the reasonable inference that Franklin knew the .45 caliber revolver was stolen. Because Franklin possessed the revolver, only slight corroborating evidence was necessary to establish knowledge. (See

---

[2]    Franklin also argues that the jury's acquittal and failure to reach a verdict on two counts of carrying a concealed firearm (§ 25400, subd. (a)(2)) shows the jury could not have found that Franklin possessed the .45 caliber revolver. Franklin does not provide any legal reasoning or authority to support his argument. We find Franklin's argument unpersuasive. The offense of carrying a concealed firearm requires proof the firearm was in fact concealed, at least in part. (See *ibid.*; see also *People v. Hale* (1974) 43 Cal.App.3d 353, 356.) A reasonable jury could have found that Franklin possessed the .45 caliber revolver for purposes of the offense of receiving stolen property, but he did not carry it in a concealed manner.

8

*People v. McFarland, supra*, 58 Cal.2d at p. 754; *People v. Reyes, supra*, 52 Cal.App.4th at pp. 984-985.)  The record here contains sufficient corroborating evidence, including Franklin's flight from police and his attempt to discard the revolver.  (See *People v. Taylor* (1969) 2 Cal.App.3d 979, 984-985 ["Taylor's knowledge that the gun was stolen could reasonably be inferred from his apparent flight, his discard of the weapon upon seeing the police officer, [and other circumstances]."].)  Franklin's claim that other inferences could be drawn from these facts is unpersuasive given our standard of review, in which we must draw all reasonable inferences in favor of the judgment below.  (See *People v. Grant, supra*, 113 Cal.App.4th at p. 595.)  The evidence supports Franklin's conviction for receiving stolen property under section 496.

II

Franklin further contends the evidence was insufficient to support the gang enhancement the jury found in connection with his conviction for unlawfully possessing ammunition, i.e., the 9 millimeter cartridges found on Franklin's person following his arrest after Batiste's murder.  The relevant statute prescribes the enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."  (§ 186.22, subd. (b)(1).)  The statute establishes two prongs that must be satisfied to impose the enhancement.  (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.)

First, the crime must be gang related:  "[T]he Legislature included the requirement that the crime to be enhanced be committed for the benefit of, at the direction of, or in

9

association with a criminal street gang to make it 'clear that a criminal offense is subject to increased punishment under the [Street Terrorism Enforcement and Prevention] Act only if the crime is "gang related." ' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)  However, "[n]ot every crime committed by gang members is related to a gang." (*Ibid*.)  " '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' " (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657 (*Ochoa*).)

Second, the defendant must have committed the crime with the requisite specific intent:  "[T]he scienter requirement in section 186.22[, subdivision] (b)(1)—i.e., 'the specific intent to promote, further, or assist in any criminal conduct by gang members'—is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Albillar, supra*, 51 Cal.4th at p. 66.)  Nor must the criminal conduct promote the gang itself.  "There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*." (*Id.* at p. 67.)

We review the jury's finding for sufficiency of the evidence, which we have discussed *ante*.  (*Albillar, supra*, 51 Cal.4th at pp. 59-60; *Ochoa, supra*, 179 Cal.App.4th

at pp. 656-657.) We conclude the evidence here supports both prongs of the gang enhancement statute.

The record supports the jury's finding that Franklin's possession of ammunition was gang related, i.e., for the benefit of or in association with a criminal street gang, based on the evidence that Franklin sought ammunition from a fellow Lincoln Park gang member, Emery Richardson, in the days before Franklin was arrested. The ammunition was the same caliber (9 millimeter) as the gun Franklin used in his gang-related murder of Batiste—a gun that Franklin obtained from Richardson as well. It was therefore reasonable for the jury to infer that the ammunition Franklin possessed was the direct result of his request to Richardson, or at least related thereto. These gang connections distinguish Franklin's crime from those considered in the authorities Franklin cites. (See *Ochoa, supra*, 179 Cal.App.4th at pp. 653-656; *People v. Ramon* (2009) 175 Cal.App.4th 843, 851.) Combined with the prosecution's evidence of the structure and practices of the Lincoln Park gang, including the importance of guns and gun-related crimes, the jury was entitled to infer that Franklin's possession of ammunition was for the benefit of or in association with the gang.[3]

The same evidence supports the jury's finding that Franklin possessed the specific intent to promote criminal conduct by gang members. Gun-related crimes, such as

---

[3] Franklin points out that the prosecution's gang expert did not specifically opine that Franklin's possession of ammunition was gang related. While expert testimony is admissible on this issue (see *People v. Gardeley* (1996) 14 Cal.4th 605, 620), expert testimony is not required for the jury to find the enhancement. The jury may make its finding if supported by the evidence, lay or expert, and any reasonable inferences based on that evidence.

murder, require ammunition. Based on the evidence of Franklin's conduct, and that of other gang members, it was reasonable for the jury to infer that Franklin's possession of ammunition was intended to promote further gun-related crimes. We disagree that the jury's finding was based solely on Franklin's gang membership, as Franklin contends.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

McDONALD, J.

12