**Otis CHESTNUT, Susan Karp, Stephen Martinot, Ellen Shallit, Michael Brown, Jeremiah Gelles, Levi Laub, and Robert Apter, Appellants,**

v.

**The PEOPLE OF the STATE OF NEW YORK, Appellee.**

**No. 164, Docket 30402.**

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1966.

Decided Dec. 2, 1966.

**2**

Basil R. Pollitt, New York City (Sanford M. Katz, New York City, on the brief), for appellants.

Joseph A. Phillips, Asst. Dist. Atty. (Frank S. Hogan, Dist. Atty., New York County, on the brief), for appellee.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The eight appellants claim the right to have the criminal cases pending against them in the state court removed to the federal court on the ground that they will be denied or cannot enforce in the state court their rights arising under a law providing for such equal civil rights.

Appellants have been charged in informations filed in the Criminal Court of the City of New York with criminal contempt under § 600(6) of the New York Penal Law, McKinney's Consol.Laws c. 40, for refusing to answer questions propounded by a Grand Jury for New York County investigating the Harlem riots of 1964. Their cases were removed to the federal court pursuant to 28 U.S.C. § 1443(1) which provides for removal of an action:

> Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.

Appellants specifically challenge § 596 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30 which requires a grand juror to be "intelligent; of sound mind and good character; well informed," and "the owner * * * of real or personal property of the value of two hundred and fifty dollars"; and § 609 (1), which requires the county clerk to make a "special investigation" of persons qualified to serve as grand jurors. Appellants allege that the method of selection results "in the exclusion of the great majority of qualified Negro and Puerto Rican citizens and members of low income groups"; [1] therefore, they argue

---

1. The New York Court of Appeals has twice considered similar claims. In Peo-

ple v. Dessaure, 299 N.Y. 126, 85 N.E.2d 900, cert. denied, 337 U.S. 949, 69 S.Ct.

that the Second August 1964 Grand Jury before which they were called to testify was an illegally constituted tribunal and without authority since it was selected in violation of the equal protection clause of the fourteenth amendment, 18 U.S.C. § 243,[2] and 42 U.S.C. § 1981.[3]

■ After the cases had been removed to the district court, appellee moved pursuant to 28 U.S.C. § 1447(c) [4] to remand the action to the Criminal Court for the City of New York, County of New York. Judge Croake, in a memorandum decision, concluded that the cases had been improvidently removed, and ordered them remanded. This Court denied appellants' motion for a stay pending appeal,[5] but Mr. Justice Harlan as the Circuit Justice granted a stay so that the appeal might be considered by us in light of the *Rachel* and *Peacock* cases, infra, then pending in the Supreme Court but not yet decided, 86 S.Ct. 940, 15 L.Ed.2d 842 (1966).

## I.

We turn our attention initially to the conditions which must be met in order to remove a case under § 1443(1). It is essential for removal that the prosecution be "[a]gainst any person who is denied or cannot enforce [one of his civil rights] in the courts of such State", and that the right must be one arising "under any law providing for the equal civil rights of citizens of the United States".

■■ In light of the developments in this area of the law, it seems clear to us that the appellants' contention that the property qualification of § 596 of the Judiciary Law and the alleged vagueness of the section violate the equal protection clause of the constitution, does not meet the second requirement for removal. "[T]he phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus * * broad contentions under the * * * Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands." Georgia v. Rachel, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966). Although the Court does not seem to have decided whether a denial of rights protected by the equal protection clause of the constitution meets the second requirement for removal under § 1443(1), its language in *Rachel* would seem to support the view expressed in Peacock v. City of Greenwood, Miss., 347 F.2d 679 (5th Cir. 1965), rev'd on other grounds, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), that "not every violation of the equal protec-

---

1510, 93 L.Ed. 1751 (1949), it upheld the Grand Jury selection procedure for Nassau County, while in People v. Agron, 10 N.Y.2d 130, 218 N.Y.S.2d 625, 176 N.E.2d 556, cert. denied, 368 U.S. 922, 82 S.Ct. 245, 7 L.Ed.2d 136 (1961), it upheld the constitutionality of the Grand Jury selection system for New York County.

2. "No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude * * *."

3. "All persons within the jurisdiction of the United States shall have the same right in every State * * * to the full and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens * * *."

4. "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case * * *. The State court may thereupon proceed with such case."

5. It is clear now that the order remanding the case to the state courts is appealable. 28 U.S.C. § 1447(d) provides that "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise." The exception was provided by § 901 of the Civil Rights Act of 1964, 78 Stat. 266.

tion clause will justify removal, but only those violations involving discrimination based on race." 347 F.2d at 682.[6] This is in harmony with the purpose of the removal section, as revealed by its history—to protect those rights defined in terms of *racial* equality. Georgia v. Rachel, supra, 384 U.S. at 788–792, 86 S.Ct. 1783. Since § 596 does not on its face discriminate in terms of race, appellants' claim of violation of the equal protection clause does not qualify their case for removal. But see Peacock v. City of Greenwood, supra at 684.

## II.

Appellants contend, however, that the New York law violates 42 U.S.C. § 1981 and 18 U.S.C. § 243. Both sections, it appears, provide for "specific civil rights stated in terms of racial equality,"[7] and thus meet the second requirement of § 1443(1).[8] It is necessary, therefore, for us to determine whether appellants' claims comply with the language of the section which makes it a condition for removal that the petitioners be "denied or cannot enforce" their rights in the state courts.

The allegations in appellants' petition for removal resemble closely those of the petitioners in Gibson v. State of Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896). There it was claimed that 7000 Negro citizens in Washington County, Mississippi, were qualified for jury service, while only 1500 qualified whites resided there; yet, no Negroes had served on grand juries for several years due to deliberate racial discrimination by the officials in charge of selecting jurors. The Supreme Court, in disposing of this charge, stated:

[T]hese facts, even if they have been proved and accepted, do not show that the rights of the accused were denied by the constitution and laws of the state, and therefore did not authorize the removal of the prosecution from the state court. * * * such evidence would be for consideration of the trial court upon a motion by the accused to quash the indictment, such motion being based on the ground that the indictment against him had been returned by a grand jury from which were purposely excluded, because of their color, all citizens of the race to which he belonged. * * * [A] *removal* * * * could not be ordered upon the ground, simply that citizens of African descent had been improperly excluded, because of their race, and without sanction of the constitution and laws of the state, from service on previous grand juries, *or from service on the particular grand jury that returned the indictment against the accused.* Id. at 584, 16 S.Ct. at 908. (Emphasis added.)

But, the Court's decision in *Gibson* was merely an application of the older *Strauder-Rives* doctrine,[9] which held that

6. The Supreme Court's language in Rachel casts doubt on our dicta in People of State of N. Y. v. Galamison, 342 F.2d 255, 271 (2d Cir.), cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).

7. See note 2 and note 3, supra.

8. The Supreme Court clearly stated that § 1981 meets the statutory definition. City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed. 2d 944 (1966).

9. Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879); State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879). The Court in both cases was interpreting an earlier removal statute, § 641 of the Revised Statutes of 1874, the language of which was in almost all respects similar to that now found in § 1443(1). Section 641 was also before the Court in Neal v. State of Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880); Bush v. Commonwealth of Kentucky, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (1882); Gibson v. State of Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896); Smith v. State of Mississippi, 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082 (1896); Murray v. State of Louisiana, 163 U.S. 101, 16 S.Ct. 990, 41 L.Ed. 87 (1896); Williams v. State of Mississippi, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1897); and Commonwealth of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906). The Supreme Court did not consider the removal statute again until its decisions in *Rachel* and *Peacock*.

in order to remove (under an earlier version of § 1443(1)), the petitioner must prove that he "is denied or cannot enforce" his rights in the state courts because of a "formal expression of state law." Georgia v. Rachel, supra, 384 U.S. at 803, 86 S.Ct. 1783.[10] It was not sufficient merely to allege that a statute, fair on its face, was being administered in a discriminatory manner. The reason for this was two-fold:

"It ensured that removal would be available only in cases where the predicted denial appeared with relative clarity prior to trial. It also ensured that the task of prediction would not involve a detailed analysis by a federal judge of the likely disposition of particular federal claims by particular state courts. That task not only would have been difficult, but it also would have involved federal judges in the unseemly process of pre-judging their brethren of the state courts." Id. at 803–804, 86 S.Ct. at 1796.

■ It is clear to us, therefore, that under the *Strauder-Rives* doctrine, and its application in Gibson v. State of Mississippi, supra, appellants are not entitled to remove their cases to the federal courts because the alleged denial of their civil rights is not "manifest in the formal expression of state law."

## III.

It is contended, however, that the *Strauder-Rives* doctrine, as expanded by the Supreme Court in Georgia v. Rachel, supra, permits removal in the present case. We believe the appellants read the *Rachel* decision much too broadly. The defendants in *Rachel* were to be tried in the state court for violating Georgia's trespass law in seeking to obtain service at a privately owned restaurant open to the public. The Supreme Court had already ruled in Hamm v. City of Rock

Hill, 379 U.S. 306, 311, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), that the Civil Rights Act of 1964 protected individuals from *prosecutions* in such cases. The Court, therefore, concluded in *Rachel* that removal was proper because "[i]n the narrow circumstances of this case, *any* proceedings in the courts of the State will constitute a denial of the rights conferred by the Civil Rights Act of 1964, as construed in Hamm v. City of Rock Hill," 384 U.S. at 804, 86 S.Ct. at 1796. And, it observed, "It is no answer in these circumstances that the defendants might eventually prevail in the state court." Id. at 805, 86 S.Ct. at 1797 (footnote omitted).

City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), decided the same day, focused again on the standards for removal of a state criminal prosecution to the federal court. There, the defendants were being prosecuted in the Mississippi courts for violating local city ordinances by obstructing the streets while participating in a campaign aimed at increasing Negro voter registration. They alleged that they had been denied their equal civil rights because their arrests and prosecutions were solely for the purpose of harassing and punishing them for protesting racial conditions in Mississippi. They also claimed that they had been denied and could not enforce their rights in the state courts because those courts and the state's law enforcement officers were prejudiced against them and were committed to a policy of racial segregation.

The Supreme Court, however, decided that the order of removal to the federal courts had been improper and distinguished *Rachel* in these terms:

[N]o federal law confers immunity from state prosecution * * *. It is *not* enough to support removal under § 1443(1) to allege or show that the de-

---

10. In *Strauder*, the West Virginia statute provided that "All white male citizens who are twenty-one years of age and who are citizens of this State shall be liable to serve as jurors, except as herein provided." 100 U.S. at 305.

fendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain fair trial in a particular state court. &ast; &ast; &ast; The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situation where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court. 384 U.S. at 827–828, 86 S.Ct. at 1812 (footnotes omitted).

■ The precept given to us by the Supreme Court as a result of *Peacock* and *Rachel* is that the right to remove under § 1443(1) is not a broad or a recently extended one, as appellants contend; but, indeed, is a right limited in scope. And, a reading of the cases does not disclose that the Court was overruling the *Strauder-Rives* doctrine or Gibson v. State of Mississippi, supra. Indeed, the Court in *Peacock* stated:

[W]e decline to repudiate those decisions, and we decline to do so not out of a blind adherence to the principle of *stare decisis,* but because after independent consideration we have determined, for the reasons expressed in this opinion and in *Rachel,* that those decisions were correct in their basic conclusion that the provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal courts

in the administration of the criminal law. 384 U.S. at 831, 86 S.Ct. at 1814.[11]

### IV.

This leads us to the conclusion that we do not have before us a case where the denial of civil rights is "manifest in the formal expression of state law." And, clearly, we are not dealing with any statute which forbids a state prosecution in the circumstances here presented. Nor, do appellants' cases fall within the narrow exception to the *Strauder-Rives* doctrine which the Supreme Court carved out in *Rachel* since the very act of bringing these appellants to trial in the state courts will not inevitably deny them their civil rights.

■■ We believe that the alleged illegality of the New York Grand Jury can be amply litigated in the state courts. It would be unseemly, therefore, for us to prejudge our brethren of the state courts and conclude that appellants will be foreclosed from enforcing their rights in a state forum. The healthy functioning of our federal system is fostered when the administration of the state's criminal laws and the determination of their validity is left in the first instance to the courts of the state.[12]

■ It should be noted, however, that our conclusion that appellants have not met the requirements of § 1443(1) for removal to a federal tribunal at this juncture of the state's prosecution, is in no manner a determination by this Court that §§ 596 and 609 of the New York Judiciary Law are constitutional. We are confident that in light of recent decisions by the Supreme Court and federal appellate courts in other Circuits, that New York will give careful consideration

---

11. The Court went on to cite some illuminating figures. In fiscal 1963, there were only 14 criminal removal cases in the entire country; and in 1964 the number rose to 43. In 1965, however, in the Fifth Circuit alone, there were 1079 criminal removal cases. The Court concluded, "But this phenomenal increase is no more than a drop in the bucket of what could

reasonably be expected in the future." 384 U. S. at 832, 86 S.Ct. at 1815.

12. The so-called "abstention doctrine," whereby a federal court will decline to entertain an action even though it has jurisdiction, is based on this same consideration. See, e.g., Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

to the very serious constitutional issues that appellants raise concerning the State's Grand Jury selection procedures.[13] Only after appellants have liti-

13. The characterization in the State's brief (which consists of a sparse 3 pages) of the appellants' attack on the validity of the Grand Jury as "Quite obviously * * * a lot of nonsense," leads us to believe that the State does not appreciate recent developments in this area of the law. The Supreme Court has recognized the "invaluable function" that the State Grand Jury serves "as a primary security to the innocent against hasty, malicious and oppressive persecution," and by "standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason and was dictated by an intimidating power or by malice and personal ill will." Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). While it is true that "[n]either the jury role nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group," Swain v. State of Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), nevertheless, obvious and unexplained differences in the proportion of Negroes and whites on juries when considered in the light of the racial proportions in the population do furnish evidence of systematic exclusion, U. S. ex rel. Seals v. Wiman, 304 F.2d 53, 67 (5th Cir. 1962), cited with approval in Labat v. Bennett, 365 F.2d 698 (5th Cir., August 15, 1966). And token summoning of Negroes for jury service does not meet constitutional requirements. Brown v. Allen, 344 U.S. 443, 471, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

The Supreme Court's recent decision in Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965), raises questions with respect to the validity of the requirement of § 596 that a grand juror be "intelligent; of sound mind and good character; well informed," and on the constitutionality of the "special investigation" of potential grand jurors conducted by the county clerk pursuant to § 609. But see Brown v. Allen, 344 U.S. 443, 472–474, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ; Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947) (New York's "blue ribbon" jury upheld). In the *Louisiana* case, the Court found unconstitutional a state requirement that voters be able to interpret any part of the Louisiana or United States constitution. This provision, it held, violated the fifteenth amendment because of the arbitrary power that it gave to state election officials to pick and choose by their own standards who can or cannot vote.

More recently, in Rabinowitz v. United States (5th Cir., July 20, 1966), 366 F.2d 34, the Court of Appeals, in finding that the method of selection of federal jurors in Georgia violated a federal statute, stated that "the desire for competency must not by [sic] pursued to the extent that a fair cross-section is prevented [from serving]." Id. at 55 (footnote omitted). The court rejected the defense that the jury commissioners had not specifically intended to exclude Negroes from the juries. "The jury commissioners must be held to have intended the natural result which flowed from their conduct. * * * The Constitution and laws of the United States place an affirmative duty on the court clerk and the jury commissioner to develop and use a system that will probably result in a fair cross-section of the community being placed on the jury rolls." Id. at 57 (footnote omitted).

The constitutionality of the requirement contained in § 596 that a grand juror be "the owner of real and personal property of the value of two hundred and fifty dollars," also raises interesting questions for resolution. In Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the Supreme Court invalidated Virginia's poll tax, finding that it was a violation of equal protection to make affluence a standard for voting. And the Fifth Circuit in *Labat*, supra, found that a Louisiana statute for selecting jurors, while fair on its face, was administered in a discriminatory manner when "daily wage earners" were excluded from jury duty. The state officials maintained that these individuals were excluded in order to relieve them from the economic burden that jury duty would involve. But, most of the individuals in the "daily wage earners" category turned out to be Negroes. The Court concluded that "exclusion of daily wage earners *as a class* violates the petitioner's due process and equal protection rights to an impartial jury representing a cross-section of the community." But see Brown v. Allen, supra ; Fay v. People of State of New York, supra.

The Supreme Court may soon shed more light on the law in the area of alleged discrimination in the selection of jurors. We note that the Court has recently granted certiorari in Bostwick v. South Carolina, 87 S.Ct. 102 (Oct. 10, 1966), and Whitus v. Georgia, 87 S.Ct. 183 (Oct. 10, 1966).

gated their contentions in the state courts may they be heard in the federal system.[14]

Affirmed.

14. "If they go to trial and there is a complete absence of evidence against them, their convictions will be set aside · because of a denial of due process of law. Thompson v. City of Louisville, 362 U.S. 199 [80 S.Ct. 624, 4 L.Ed.2d 654]. If at their trial they are in fact denied any federal constitutional rights, and these denials go uncorrected by other courts of the State, the remedy of federal habeas corpus is freely available to them. Fay v. Noia, 372 U.S. 391 [83 S.Ct. 822, 9 L. Ed.2d 837.] If their federal claims at trial have been denied through an unfair or deficient fact-finding process, that, too, can be corrected by a federal court. Townsend v. Sain, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770.]" City of Greenwood v. Peacock, supra, 384 U.S. at 829, 86 S. Ct. at 813.