Michelle LAURENTI, Mark Laurenti and Long Island Housing Services, Inc., Plaintiffs,

v.

WATER'S EDGE HABITAT, INC., Donna Moroney, Management Consultants International, Inc., Gerry Ronneburger, Padmaja Pulipati, and Soma Pulipati, Defendants.

No. 93–CV–1333.

United States District Court, E.D. New York.

June 28, 1993.

Jo Anne Simon, Susan Feathers, and Stefan Kreiger, Community Legal Assistance Corp., Hempstead, NY, for plaintiffs Michelle and Mark Laurenti and Long Island Housing Services.

Stanley J. Somer and Patricia N. Gillard, Stanley J. Somer & Associates, P.C., Commack, NY, for defendants Water's Edge

Habitat, Inc., Donna Moroney, Management Consultants International, Inc., and Gerry Ronneburger.

Padmaja and Soma Pulipati, pro se.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiffs move pursuant to Fed.R.Civ.P. 65(a) and the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3613(c) for a preliminary injunction enjoining defendants from seeking their eviction from an apartment in the Water's Edge Habitat so long as the Village of Patchogue takes no action against the defendants to enforce the Village Occupancy Code (hereinafter the "Code"). Plaintiffs allege that the defendants seek to deny them housing on the basis of their familial status. Due to plaintiffs' failure to demonstrate a likelihood of success on the merits of this action, this motion for preliminary injunction must be denied.

Plaintiffs Mark and Michelle Laurenti began looking for an apartment for themselves and their four children in August, 1992. On or about August 8, 1992, plaintiffs entered into a sublease agreement with defendants Pulipati for rental of the Pulipatis' co-op apartment in Water's Edge Habitat. Defendants Pulipati informed the plaintiffs that under the Pulipatis' proprietary lease with Water's Edge Habitat approval of the board of directors is required prior to any tenant subleasing the apartment. Plaintiffs completed an application for board approval and in the area designated "other residents", wrote: "Vanessa Gabrielle Leah". Plaintiffs also indicated on the application that Mrs. Laurenti was employed by the Town of Brookhaven.

Upon receiving the application, the board of directors requested that plaintiffs appear with all would-be occupants of the apartment on August 12, 1992 for an application interview. In spite of these instructions, plaintiffs brought only two of their four children to the interview. Subsequent to this interview, on August 20, 1992, the board notified the Laurentis that they had been approved as tenants.

However, it came to the defendants' attention that the plaintiffs' family consisted of six people, the plaintiffs and their four children. On August 25, Defendant Scotto phoned Mrs. Laurenti, who confirmed that a total of six people were to occupy the apartment. Subsequently, on August 27, 1992, defendants informed the plaintiffs that board approval was withdrawn and therefore plaintiffs could not move into the apartment. Scotto Aff. ¶ 3, Ronneburger Aff. ¶ 7. Defendants claim they informed plaintiffs that approval was withdrawn because plaintiffs' had lied on their application about the number of occupants and that six occupants in the apartment violated the Village Occupancy Code. Scotto Aff. ¶ 2; Moroney Aff. ¶ 4; Ronneburger Aff. ¶ 8. In fact, defendants claim that plaintiffs were told that this matter "it is not a question of children ... it is a question of the number of occupants. You lied on your application...." Scotto Aff. ¶ 3. Nevertheless, plaintiffs contend they were told by the defendants that board approval was withdrawn because "they had four children". Pl. Ex. A, ¶ 12–14.

Despite defendants' withdrawal of approval and direction not to move in, plaintiffs did so on September 1, 1992.

Defendants sought and obtained a letter from the Village of Patchogue dated September, 21, 1992, interpreting the Occupancy Code. This letter, addressed to the plaintiffs, states that the plaintiffs "... are in violation of Sections 55–6A and 55–44B of the Village code. Please note that the maximum occupancy for this one bedroom unit is three (3) occupants. Please make arrangements to have the violations corrected within thirty (30) days of receipt of this notice." Def.Ex. C. Plaintiffs did not "correct" the violation and on March 12, 1993, defendant Pulipati initiated eviction proceedings in Suffolk County Court. Then on May 3, 1993, defendant Management Consultants International and Water's Edge Habitat sent defendants Pulipati a Notice of Termination of the Proprietary Lease because of the continued occupancy of unapproved tenants in their

apartment.[1]  Plaintiffs now seek to enjoin all defendants from taking any action seeking their eviction.

Discussion

Plaintiffs allege that the defendants discriminated against them on the basis of the number of children in their family.  Plaintiffs do not allege, however, that the defendants have discriminated against families in the past, nor do they offer any evidence of prior discriminatory acts.  Additionally, plaintiffs do not allege that the Village Code itself is discriminatory.  Rather, this action is based solely on defendants' alleged discriminatory acts against these plaintiffs, the Laurenti family.

"In order to obtain a preliminary injunction, the moving party must demonstrate both (1) irreparable harm in the absence of the requested relief, and (2) either (a) a likelihood that it will succeed on the merits of the actions, or (b) a sufficiently serious question going to the merits combined with a balance of hardships tipping decidedly in favor of the moving party.  *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir.1992).  The Court finds that the plaintiffs have not shown a likelihood of success on the merits, nor have they raised a sufficiently serious question regarding the merits of this case.  Due to this failure by the plaintiffs, it is not necessary that the Court examine the issue of irreparable harm in order to deny this motion for preliminary injunction.[2]

In order to show a likelihood of success on the merits, the plaintiffs must first establish a prima facie case of housing discrimination under the Fair Housing Act.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).  Upon making this prima facie showing, the burden then shifts to the defendant to show that their denial was based on non-discriminatory factors.  *Robinson v. 12 Lofts Realty*, 610 F.2d 1032, 1038 (2d Cir.1979).  If this showing is made, the plaintiffs may then show that the factors offered by the defendant were merely pretextual.  *Id.*

To establish a prima facie case in an action seeking to redress alleged discriminatory acts against an individual, such as the present matter, the plaintiffs must show (1) they are members of a protected class; (2) they applied for and were qualified to rent the apartment; (3) they were rejected; and (4) the apartment remained available.  *Robinson v. 12 Lofts Realty*, 610 F.2d 1032, 1038 (2d Cir.1979).

Plaintiffs allege that they were discriminated against because they have four children or, in other words, on basis of their familial status.  Familial status is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with ... a parent or another person having legal custody of such individual or individuals...."  42 U.S.C. § 3602(k).  The Laurentis are a family of six (6), with four children under the age of eighteen (18), and thereby

1. The letter stated:

"... The grounds for such termination are that you are in default under paragraph 31(e) of the proprietary lease in that you have further sublet the referenced apartment to six (6) individuals instead of the four (4) individuals originally approved by the Board of Directors in violation of paragraph 16(e) and that such violation continued for a period of 30 days after receiving notice of same, and further you have allowed the sub-tenants to occupy the premises without their approval by the Board."

2. Plaintiffs argue that irreparable harm is presumed whenever a claim of housing discrimination is established.  However, the Eleventh Circuit cases cited by the plaintiffs which allegedly support this proposition actually hold that a **rebuttable presumption** of irreparable harm exists where plaintiffs have made a **substantial showing** or **shown a substantial likelihood of success on the merits** that the defendant has violated the Fair Housing Act.  *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir.1984); *Rogers v. Windmill Pointe*, 967 F.2d 525 (11th Cir.1992).  Such a standard incorporates a showing of likelihood of success into irreparable harm, thus making irreparable harm contingent on a showing of likelihood of success.  Thus even if this Court followed plaintiffs' suggestion and adopted the Eleventh Circuit standard, which has not been expressly adopted by the Second Circuit, the issue of likelihood of success must be addressed first.

If this Court were to examine irreparable harm, it is clear that the plaintiffs have offered no evidence to support their claim that there is a housing shortage in Suffolk County.

fall within the definition of familial status. Thus, plaintiffs are members of a protected class under the Fair Housing Act. 42 U.S.C. § 3604.

Next, the plaintiffs must show they applied for and were qualified to rent the apartment and were denied such a rental. Plaintiffs ability to qualify for the apartment hinges on the interpretation of the term "sleeping rooms" in the Code.[3] Plaintiffs contend that the rooms designated "living room" and "dining room" may be considered sleeping rooms, thereby setting the maximum occupancy of the premises at seven (7). Defendants dispute this interpretation and assert that both of these rooms may not be considered "sleeping rooms", thus causing the plaintiffs occupation of the apartment to violate the Code. While a literal but clearly abnormal interpretation of the Village Code might support the plaintiffs' argument, defendants have submitted a letter from the Village of Patchogue stating that the plaintiffs are in fact in violation of the Code.[4] Def.Ex.C. Nevertheless, for the purposes of this motion we will assume that the plaintiffs' interpretation of the Code is correct (although the Village is on record that such an interpretation is incorrect), and, as a result, plaintiffs are qualified to lease the apartment. Thus, for the purposes of this discussion we assume that the plaintiffs have made a prima facie showing of a valid Fair Housing Act claim.

■ Once a prima facie showing is made, the defendants must show that their actions were based on non-discriminatory factors. The defendants advance four grounds for seeking the plaintiffs' eviction: (1) plaintiffs lied on their application about the number of occupants (fraud in the inception); (2) the plaintiffs lied about the status of Mrs. Laurenti's employment (id.); (3) six occupants in the apartment would violate the Code; and (4) six occupants violates the by-laws of the co-op. Plaintiffs assert that these proffered reasons are merely pretextual, masking the

defendants actual motive to discriminate against families with four children. However, the evidence presently before the Court demonstrates that the defendants have valid non-discriminatory reasons to seek plaintiffs eviction and it is unlikely that plaintiffs will be able to prove otherwise at trial.

Water's Edge Habitat requires a prospective sublessee to apply to the co-op's board of directors for approval. Plaintiffs were told to appear at the application interview with all those individuals who would be occupying the apartment. Instead of appearing with all six would-be-occupants, plaintiffs appeared with only two of their four children. There is nothing in the record to indicate that the plaintiffs informed the interviewer that less than all occupants were present and the plaintiffs offer no excuse for acting in such an apparently deceptive manner.

Prior to the interview, Mr. Laurenti completed the lease application. It is uncontroverted that he listed, at most, the names of only three of his four children in the area designated "other residents". Mr. Laurenti states that he did not list the fourth child, Jordan, because "I did not have time· to do so." Pl.Ex. J, ¶ 5. If there be a sham in this case it is this proffered excuse. It is incomprehensible to this Court how the Mr. Laurenti could possibly not have the time to write six more letters (Jordan) on the application. Further, if such were the case and plaintiffs had no deceitful motives, certainly they would have used the interview to inform the defendants of this omission. Plaintiffs, however, made no effort to dispel any confusion they had caused. In light of the plaintiffs' failure to appear with all would-be occupants and failure to represent to the interviewer the true number of "other residents", it is apparent to the Court that the plaintiffs must have intentionally omitted the name of the fourth child. It is elementary that fraud in the inception of any agreement is a suffi-

---

**3.** The Code states: "In dwelling units and rooming units the maximum number of occupants shall be one (1) occupant per sleeping room, other than a kitchen, having the floor area...."

**4.** This letter is dated September 21, 1992. The Town has taken no further action against plain-

tiffs since that date. Pl.Ex. C, D. The Code was amended on April 26, 1993, to explicitly preclude living rooms and dining rooms from being considered bedrooms. In spite of this amendment, it is the defendants' actions under the former Code which are at issue here.

cient ground for the person deceived to vitiate the deal.

Defendants contend that because only two children appeared at the interview, and three names were listed on the application, they assumed that the three names "Vanessa Gabrielle Leah" were actually the names of only two children, "Vanessa Gabrielle" and "Leah". Defendants offer the application itself showing that the children's ages were listed "6–7" in further support of the defendants' view that the listed names were in fact only two people. Mr. Laurenti does not recall listing any of the childrens' ages on the application and alleges that the "6–7" notation was made by the defendants. However, in light of his other apparently deceptive acts, his lack of recollection is far less credible than defendants' explanation.

Additionally, defendants contend that plaintiffs made a second misrepresentation on their application: that Michelle Laurenti was employed by the Town of Brookhaven. An August 31, 1992, letter from the Town of Brookhaven to defendant Management Consultants states that Mrs. Laurenti is no longer employed by the Town. Def.Ex. C. Apparently, Mrs. Laurenti had not worked since June 18, 1992, because she requested the summer months off. It is unclear when she was terminated from her position; Mrs. Laurenti claims she was not notified of her termination until September, but clearly she had been let go by, at the latest, August 31, and in all probability was notified earlier.[5] The Court is unable from the evidence before it to determine beyond a reasonable doubt whether Mrs. Laurenti was knowingly misrepresenting her employment status on her application. However, there certainly exists enough evidence from which the defendants could reasonably conclude she had misrepresented her employment status to them.

In support of their assertion that these misrepresentations were the actual basis for withdrawing approval of plaintiffs application, the defendants offer a clause in the application itself, which states that any misrepresentations made on the application will cause the application to be rejected. Paragraph 2, on the first page states:

"I understand that the acceptance for the purchase/lease is conditioned upon the truth and accuracy of this application and upon the approval of the Board of Directors/Manager. Occupancy prior to approval is prohibited. Any misrepresentation or falsification of information on these forms will result in the automatic rejection of this application."

In addition to the misrepresentations, defendants claim to be acting in accordance with the Village Code. Although, as we stated above, the Court need not determine the proper interpretation of the Code at this time, it is clear from the September 21, 1992, letter from the Village of Patchogue that the defendants could and did reasonably believe that six occupants would violate the Village Code. The plaintiffs are not disputing the legality of the Code itself or alleging that the Code effectively discriminates against families, rather they are alleging that the defendants acted with a discriminatory purpose. It is unlikely that the plaintiffs can show that the defendants' actions were merely a pretext for discrimination when the defendants reasonably believed those actions were in accordance with the Village Code.

Finally, defendants claim to be acting in accordance with the by-laws of the co-op. This claim appears to be undisputed. In fact, in the plaintiffs' complaint they allege "on information and belief that the by-laws of the co-op originally limited a two bedroom apartment to three occupants and in or about September, 1992, the by-laws were amended to allow two adults and two children in a two-

---

**5.** The letter from the Town of Brookhaven states: "It has come to the attention of this office that this employee had requested to be removed from the work schedule for the summer months. During this time, budget cuts were made within the department. Ms. Laurenti is no longer employed by the Town of Brookhaven. Her last day that she reported for duty was June 18, 1992."

If August 31, was the actual termination date of Ms. Laurenti's employment it is unlikely that the letter would state that Mrs. Laurenti "is no longer employed by the Town of Brookhaven" because during the summer months "budget cuts were made within the department." This language implies that Mrs. Laurenti was terminated well before the issuance of this letter.

bedroom apartment." Complaint ¶ 30. With this allegation plaintiffs are admitting knowledge that the defendants' actions were in accordance with the by-laws and not merely a pretext.

In fact, the only evidence supporting plaintiffs' allegations of discrimination is that the defendants allegedly told the plaintiffs that approval was withdrawn because plaintiffs "had four children". Even if this statement was made, which defendants vigorously dispute, it is fully consistent with the defendants' position that it was the misrepresentation regarding the number of children who would occupy the apartment and the violation of the by-laws and Village Code which caused the withdrawal of its approval of the application.

In sum, plaintiffs assert that it was the number of children, not the number of occupants which caused the defendants to seek their eviction. However, this Court finds it unlikely that plaintiffs will be able to succeed on the merits with respect to this argument or that there is a serious question as to the merits of plaintiffs' claim. The defendants have shown that it is likely that they sought the plaintiffs' eviction for valid non-discriminatory reasons, namely the plaintiffs' violations and misrepresentations regarding the number of occupants in the apartment. Thus, plaintiffs motion for preliminary injunction must be, and is hereby, denied. The Court makes no finding regarding the merits of defendants' eviction proceedings in State Court. Unlike that proceeding, the matter before this Court revolves around plaintiffs' ability to show that the defendants discriminated against plaintiffs based on the number of children in their family. The Court's decision is limited to the issues before it: whether plaintiffs are likely to succeed in an action under the Fair Housing Act, where it is necessary to show that they were victims of discrimination. As is stated above, plaintiffs have failed to convince the Court that a preliminary injunction is warranted, and the same is hereby denied.

SO ORDERED