**WATER'S EDGE HABITAT, INC.,**
**c/o MCI, Petitioner,**

v.

**Padmaja PULIPATI and Soma Pulipati,**
**Michele Laurenti and Mark**
**Laurenti, Respondents.**

**No. 93–CV–2969 (TCP).**

United States District Court,
E.D. New York.

Sept. 30, 1993.

Susan J. Feathers and Stefan H. Krieger, Community Legal Assistance Corp., Hempstead, NY, for defendant-respondent Laurenti.

Mark Rosenberg, Rosenberg & Borack, Patchogue, NY, for defendant-respondent Pulipati.

Stanley J. Somer and Patricia N. Gillard, Stanley J. Somer & Associates, P.C., Commack, NY, for plaintiff-petitioner.

Mark L. Hanley, Monroe County Legal Assistance Corp., Rochester, NY, for amicus curiae Greater Upstate Law Project.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Petitioner moves pursuant to 28 U.S.C. § 1447(c) to remand this summary eviction proceeding to the New York State courts. Respondents Michelle and Mark Laurenti removed this action from the Sixth District Court of Suffolk County, New York pursuant to 28 U.S.C. § 1443(1), alleging that the maintenance of this proceeding in State court discriminates against them based upon their familial status in derogation of their federally guaranteed right to equal access to housing under the Fair Housing Act, 42 U.S.C. §§ 3601–31. For the reasons stated herein, petitioner's motion to remand must be granted.

## Background

Petitioner Water's Edge entered into a leasehold agreement with Padmaja and Soma Pulipati on certain co-operative property owned by Water's Edge in Patchogue, New York. In August 1992, the Pulipatis entered into a sub-lease agreement with Mark and Michelle Laurenti as undertenants subject to the approval of the co-op board, as required by the Pulipatis' lease agreement. The Laurentis filled out an application seeking the Board's approval for a sub-lease to Mr. and Mrs. Laurenti and "other residents," listed as "Venessa Gabrielle Leah." The application also indicated that Mrs. Laurenti was employed by the Town of Brookhaven. The Laurentis were directed to appear before the Board with all prospective occupants of the property.

The Laurentis appeared before the board with two of their four children on August 12, 1992. On August 20, the Board notified the Laurentis that their application was approved. Representatives of Water's Edge telephoned Mrs. Laurenti on August 25 whereupon Laurenti confirmed that she actually had four children. Subsequently, on August 27, 1992, petitioner informed the Laurentis that the approval of their sublease was withdrawn because the proposed living arrangement violated the Housing Standards of the Patchogue Village Code and the by-laws of the Water's Edge development. Shortly thereafter, petitioner also learned that Michelle Laurenti had not worked with the Town of Brookhaven for several months. Nonetheless, the Laurentis took possession of the leasehold on September 1, 1992.

Water's Edge sought and received a ruling from the Village of Patchogue interpreting Section 55–6 of the Occupancy Code limiting occupancy of any dwelling to "one occupant per sleeping room." Res.App., Ex. G. In a letter dated September 21, 1992, the Village indicated that Pulipati, as principal lessee, was in violation of the Code by permitting more than three people to live in the apartment and gave Pulipati 30 days to rectify the situation.[1] Res.App., Ex. G. No action was taken by any of the parties with respect to the infraction until March 12, 1992 when Pulipati initiated an eviction proceeding

---

1. There is some discrepancy in the papers as to the size of the apartment in question. There are repeated references to a two bedroom apartment in respondents' papers, while the letter from Patchogue and the Pulipatis' eviction petition speak of a one bedroom apartment. However, it appears that the Laurentis had too many people in the apartment whether it be one or two bedrooms.

against the Laurentis. Shortly thereafter, on March 25, the Laurentis commenced an action in this Court alleging a violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–31, in that they were discriminated against based upon their familial status due to the number of minor children in their household. *Laurenti v. Water's Edge,* No. 93–1333 (E.D.N.Y. filed March 25, 1993). The Pulipatis voluntarily stayed the State court eviction proceeding pending resolution of the federal suit. However, on May 3, 1993 Water's Edge served the Pulipatis with written notice terminating their proprietary lease effective May 14 based upon the Laurentis' occupancy of the residence in violation of the Village Code and Water's Edge by-laws.

Water's Edge commenced a holdover suit against the Pulipatis and Laurentis in Suffolk County District Court on May 17, 1993. Laurenti moved this Court for a preliminary injunction in their pending federal FHA suit to enjoin petitioner and the Pulipatis from continuing the eviction tactics in State court. Simultaneously, Laurenti and Pulipati moved the State court to stay the eviction proceedings pending the outcome of the federal case. The State court denied the stay and set the matter down for trial.[2] In a memorandum decision, familiarity with which is assumed, this Court denied respondents' motion for a preliminary injunction under the FHA. *Laurenti v. Water's Edge Habitat, Inc.,* 837 F.Supp. 507 (E.D.N.Y.1993).

On July 6, 1993, just two days before the trial date in the holdover action, the Laurentis removed the eviction proceeding to this Court pursuant to the civil rights removal statute, 28 U.S.C. § 1443(1), alleging that the continuation of the eviction proceeding violates their federally protected right to equal access to housing without regard to their familial status. Petitioner now moves this Court to remand this case for want of federal jurisdiction under 28 U.S.C. § 1447(c).

**2.** Water's Edge, for reasons that are not stated in the record, withdrew the first State holdover action on June 14, 1993 in favor of a second substantially identical holdover proceeding commenced on June 22, 1993.

## Discussion

Water's Edge seeks to remand this eviction proceeding to Suffolk County District Court pursuant to 28 U.S.C. § 1447(c) for failure to state a cognizable basis for federal jurisdiction. In evaluating a petition to remand, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979), quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). The respondents removed the present action to this Court pursuant to 28 U.S.C. § 1443(1) alleging that the State action infringed upon their federally protected rights.[3] A party removing an action under section 1443 must satisfy the two-part test established by the Supreme Court in *Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). First, the court must determine that the right allegedly being denied the removal petitioner arises under a federal law "providing for specific civil rights stated in terms of racial equality." *Rachel,* 384 U.S. at 792, 86 S.Ct. at 1790. Second, the court must determine that the petitioner cannot enforce the specified federal right in state court. *Id.* at 794–99, 86 S.Ct. at 1791–94. Because respondents cannot establish either prong of the Court's test, this action must be remanded to the State court.

### I. Federal Law Guaranteeing Equal Civil Rights

Respondent's claim of disparate treatment based upon familial status simply may not support removal under 28 U.S.C. § 1443(1). Although the Fair Housing Act ("FHA") is a federal statute that arguably guarantees "equal civil rights" within the plain meaning of section 1443, the scope of rights circumscribed by this phrase may not be ascertained without considering the circumstances under which the civil rights re-

**3.** Section 1443(1) authorizes the removal of any state court action pending against "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States...." 28 U.S.C. § 1443(1).

moval provision was drafted. In *Rachel,* the Supreme Court conducted an exhaustive review of the legislative history behind section 1443 and the historical treatment of the current statute in the federal courts before concluding that the provision "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Rachel,* 384 U.S. at 792, 86 S.Ct. at 1790. In addition, the Court found that principles of federalism and comity mandate that the removal statute be strictly construed to minimize encroachment by the federal courts upon the sovereignty of the state courts. *See City of Greenwood v. Peacock,* 384 U.S. 808, 827–28, 86 S.Ct. 1800, 1812–13, 16 L.Ed.2d 944 (1966); ·*New York v. Mitchell,* 637 F.Supp. 1100, 1101–02 (S.D.N.Y.1986). Accordingly, if the activity in question "does not on its face discriminate in terms of race, appellants claim of violation of the equal protection clause does not qualify their cause for removal." *Chestnut v. New York,* 370 F.2d 1, 4 (2d Cir.1966), *cert. denied,* 386 U.S. 1009, 87 S.Ct. 1355, 18 L.Ed.2d 439 (1967).

The federal courts have scrupulously honored the unambiguous language of *Rachel* and *Peacock* in restricting the scope of the removal statute to violations of explicit federal statutory and Constitutional laws guaranteeing racial equality for all citizens. *See Johnson v. Mississippi,* 421 U.S. 213, 227–28, 95 S.Ct. 1591, 1599–1600, 44 L.Ed.2d 121 (1975); *Chestnut,* 370 F.2d at 4; *New York v. Bell,* 617 F.Supp. 47, 49 (E.D.N.Y.1985). "Claims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice." *Johnson,* 421 U.S. at 227–28, 95 S.Ct. at 1599–1600. Relying upon a series of cases that have found a state proceeding impinging upon rights guaranteed by the FHA may implicate an "equal civil right" warranting removal to this Court, *see e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 725 (11th Cir.1991); *Emigrant Sav. Bank v. Elam Management Corp.,* 668 F.2d

671, 673 (2d Cir.1982), respondents assert that the courts have merely sought to distinguish Equal Protection rights belonging to a protected class from substantive due process rights belonging to the public generally. However, *all* of the cases cited in respondents' papers involve claims under the FHA alleging racial discrimination in housing, entirely consistent with the mandate of *Rachel.*[4] "[I]f changes are to be made in the long-settled interpretation of the provisions of this century-old removal statute, it is for Congress and not for this Court to make them." *Peacock,* 384 U.S. at 834, 86 S.Ct. at 1816. *See also Village of Port Chester v. Port Chester Yacht Club, Inc.,* 598 F.Supp. 663 (S.D.N.Y.1984); *Little Ferry Assocs. v. Diaz,* 484 F.Supp. 890 (S.D.N.Y.1980). Therefore, respondents' removal petition grounded upon alleged discrimination based upon familial status may not support removal under 28 U.S.C. § 1443(1) and must be remanded to the State court.

## II. Inability To Enforce Federal Right In State Court

██ A party removing a state case under section 1443 must also demonstrate that the right claimed is being denied or is unenforceable in the state court. 28 U.S.C. § 1443(1). It is axiomatic that a defendant has no inherent right to a federal forum to adjudicate a federal right absent exclusive federal jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983). "[T]he vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Peacock,* 384 U.S. at 828, 86 S.Ct. at 1812. This showing normally requires that "the denial be manifest in a formal expression of state law." *Rachel,* 384 U.S. at 803, 86 S.Ct. at

4. Respondent cites one case from this district wherein the Court asserted jurisdiction over a removed FHA claim under 28 U.S.C. § 1443(1). *Oxford House, Inc. v. Town of Babylon,* 819 F.Supp. 1179, 1182 (E.D.N.Y.1993). However,

plaintiff made no motion to remand that case. Although the Court could have remanded the case *sua sponte* for lack of subject matter jurisdiction, it appears that the jurisdictional issue was never reached.

1796. Since respondents do not argue that the Village ordinance is invalid on its face,[5] the Laurentis must carry the heavy burden of demonstrating that the mere pendency of the suit constitutes a continuing infringement of their rights under the FHA. *Id.* at 802–03, 86 S.Ct. at 1795–96. The present facts may not support such an inference.

The mere existence of a state suit may violate a defendant's rights so as to permit removal where the federal right at issue prohibits even the act of filing the suit or preempts the field so that the state law cannot co-exist with the federal right. *Rachel*, 384 U.S. at 797–804, 86 S.Ct. at 1793–97. This premise, known as the *Strauder–Rives* doctrine, deems the state action to be violative of the federal right when the loss or curtailment of that right has already occurred or is inevitable irrespective of the outcome of the state proceeding. *See Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880); *Virginia v. Rives*, 100 U.S. 313, 25 L.Ed. 667 (1880). Under *Strauder–Rives*, the defendant must demonstrate that the very act of being forced to defend the state suit manifests a violation of the federal right in order to state a claim for removal under section 1443. *Peacock*, 384 U.S. at 828, 86 S.Ct. at 1812. However, "the provisions of section 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and federal courts...." *Peacock*, 384 U.S. at 831, 86 S.Ct. at 1814. "[W]hen [a defendant] has only an apprehension that such rights will be withheld from him when his case shall come to trial, he cannot affirm that they are actually denied, or that he cannot enforce them." *Rachel*, 384 U.S. at 799, 86 S.Ct. at 1794. Absent an unequivocal deprivation of the federal right in state court, the remedy for an adverse verdict that denies a defendant's federal rights is appellate review, not removal. *Peacock*, 384 U.S. at 834, 86 S.Ct. at 1816.

Respondents will not be denied their federal rights in the State court proceeding. Even if Water's Edge's occupancy policy is illegal, the FHA confers no federal right to violate the facially valid Village ordinance limiting the number of occupants in the dwelling. *See Peacock*, 384 U.S. at 826, 86 S.Ct. at 1811. "The *Strauder–Rives* line of distinction was that removal will lie when enforcement of the petitioner's rights in a state court was barred by a state statute or constitutional provision which was applicable in terms although unconstitutional on its face, but not when the allegation was simply that in practice he would be denied or be unable to enforce his rights." *Emigrant Sav. Bank v. Elan Management Corp.*, 668 F.2d 671, 674 (2d Cir.1982). Under New York law, the defendant in an eviction proceeding is entitled to present all legal and equitable defenses he or she has available under State or federal law.[6] *See N.Y.Real. Prop.Acts* § 743 (McKinney 1979); *Elan*, 668 F.2d at 675; *Little Ferry Assocs. v. Diaz*, 484 F.Supp. 890, 892 (S.D.N.Y.1980) (eviction proceeding alleged to be racially motivated may be adequately challenged in landlord-tenant court). Accordingly, respondents have an adequate State remedy to protect their federal rights and removal to this Court under 28 U.S.C. § 1443(1) was improper. Therefore, this case must be remanded to the State court.

SO ORDERED.

---

5. In fact, it appears that the Laurentis concede the ordinance's facial validity. Res.Memo at 13. However, even if respondents were to attack the statute on its face, this Court would have to remand the case nonetheless since the New York State courts have not had an opportunity to review the validity of the State statute. *Gibson v. Mississippi*, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896).

6. In fact, the remedies under New York law for housing discrimination based upon familial status are arguably more favorable than the FHA. *See N.Y. Real Prop.* § 236 (McKinney 1979) (discrimination based upon familial status is misdemeanor and entitles excluded family to all costs, fees, and attorney fees in proceeding).