■ In the Matter of the Claim of LOUIS RUGGIERO, Appellant. A. G. EDWARDS & SONS, INC., Respondent; COMMISSIONER OF LABOR, Respondent. [693 NYS2d 266] —Spain, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 9, 1996, which, upon reconsideration, adhered to its prior decision ruling that claimant was disqualified from receiving unemployment insurance benefits because his employment was terminated due to misconduct.

In February 1994, claimant went to work with the employer, a banking and brokerage firm, as a cashier/wire service operator. This position included the responsibilities of handling millions of dollars in transactions on an almost daily basis. The employer is regulated by the US Securities and Exchange Commission (hereinafter SEC) and the National Association of Securities Dealers (hereinafter NASD).

Prior to being hired, claimant completed an employment application which included, pursuant to SEC rules, questions seeking information as to whether claimant had ever been arrested for, or charged with, any misdemeanor relating to acts of dishonesty, theft or fraud (*see*, 17 CFR 240.17a-3 [a] [12] [i] [g]). Claimant also had to be fingerprinted (*see*, 17 CFR 240.17f-2 [a]) and was warned on his job application as follows: "ARREST RECORDS ARE CHECKED WITH THE FEDERAL BUREAU OF

---

\* Defendant sought and obtained an order precluding Starner from making an in-court identification of defendant.

INVESTIGATION. Arrest records that have been expunged may be reported by the F.B.I. and should be disclosed here." Claimant answered the questions relating to the specified arrests or charges in the negative.

Notably, in 1989 and again in 1991, claimant had been arrested and fingerprinted in two separate central New York jurisdictions, each for aggravated harassment (*see*, Penal Law § 240.30), a class A misdemeanor. After claimant's appearance in the respective local courts, each of these charges was adjourned in contemplation of dismissal and subsequently dismissed (*see*, CPL 170.55).

A Federal Bureau of Investigation check of the fingerprints taken at the time he was hired by this employer revealed that the charge stemming from claimant's 1991 arrest was still open, with no reported disposition. NASD notified the employer and directed that more information about the arrest be provided including, *inter alia*, a copy of the charge itself and a record of the final disposition and, if those documents are unavailable, a letter from the arresting agency or the court. Claimant was advised by the employer of the inquiry and responded with a written statement explaining—incorrectly— that the 1991 charge was related to a traffic incident involving an altercation between him and two teenagers "which started with words and then a few obscene gestures". Claimant further stated that he had been informed by the court that this charge would be dismissed. Despite the fact that the charge was not related to dishonesty or fraud, he was directed by his employer to get written confirmation of the dismissal and a police report describing the incident.

Claimant proceeded, without objection, to pursue the documents requested. According to claimant, he then discovered that the incident he described to the employer in his written statement was actually the incident which led to his 1989 arrest. On September 1, 1994, without advising the employer about his alleged confusion, claimant provided the employer with an unsigned disposition certificate from the local court which disposed of the 1991 charge; the document shows that the charge was adjourned in contemplation of dismissal (*see*, CPL 170.55). Claimant also reported to the employer that he was advised by court staff that he was not able to get a police report because the records had been "sealed". On September 6, 1994 the employer advised claimant that the unsigned certificate was unacceptable and that its home office had determined that a police report was readily available. At this point claimant, for the first time, revealed to the employer that his writ-

ten statement concerning the 1991 incident was—by his mistake—not correct, and that the 1991 incident actually involved a woman he had known for a short period of time. Claimant was fired the next day for being untrustworthy.

Claimant's application for unemployment insurance benefits was contested. At a hearing before an Administrative Law Judge (hereinafter the ALJ), claimant established that the 1991 charge had been completely dismissed on July 24, 1992. Despite the fact that claimant's explanation of the 1991 incident to his employer proved to be false, the ALJ concluded that he had, in fact, honestly answered the questions in his job application, that his misstatement was merely poor judgment, that there was no misconduct by claimant, that the employer acted out of unjustified impatience and that claimant was entitled to unemployment benefits. On review, the Unemployment Insurance Appeal Board reversed the decision of the ALJ, concluding that claimant was guilty of disqualifying misconduct because he did not disclose the 1991 arrest in his job application despite the warning that "even expunged arrests" should be disclosed and, further, because he was not forthright about the incident when the employer first inquired. Claimant then appealed. By decision of March 10, 1999, we granted claimant's motion for reconsideration of the instant matter and vacated our prior decision (259 AD2d 834), which had dismissed as untimely claimant's appeal from the Board's decision.

Because claimant had no obligation, under the cited SEC rules, to disclose his 1991 arrest and because, under existing State law, an employer may not inquire into an employee's arrest when the charge leading to that arrest has been dismissed, we conclude that the Board's determination should be annulled and the matter remitted for a new hearing.

Our review of the record reveals that, under the governing Federal regulations, claimant honestly answered the questions in the application for employment as to prior arrests; clearly, his two misdemeanor arrests and dismissals were in no way related to dishonesty, misuse of funds or fraud (see, 17 CFR 240.17a-3 [a] [12] [i] [g]). Additionally, the State Human Rights Law (Executive Law art 15) prohibits an employer, "unless specifically required or permitted by statute [from making] *any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual,* any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual" (Executive Law § 296 [16] [emphasis supplied]). Indeed, the

charge against claimant which led to the employer's inquiry had been dismissed in its entirety at the time the employer directed claimant to produce both confirmation of the dismissal and a police report which would provide details regarding the incident which led to claimant's arrest (*see*, Executive Law § 296 [16]; CPL 160.50, 170.55). We have not located any statute or rule which would override this State statutory prohibition, and the employer has not cited any precedents, statutes or regulations authorizing the inquiry which led to claimant's dismissal.

Accordingly, the Board's decision is reversed and a new hearing must be held at which the employer's responsibilities and claimant's rights under Executive Law § 296 (16) will be addressed.

Mercure, J. P., Crew III, Peters and Graffeo, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.