OPINION OF THE COURT
Emily Jane Goodman, J.
This action and third-party action arise from a decision of the board of a cooperative apartment building to withdraw its approval of the sale of a unit to a disabled individual, upon the individual’s request for a reasonable accommodation for his disability. The seller of the cooperative apartment brought this action, seeking a declaration that she is entitled under the contract of sale to keep the buyer’s deposit, in light of the cooperative board’s decision. In the third-party action, the buyer is alleging that the cooperative board discriminated against him based on his disability, in violation of the Fair Housing Act (42 USC § 3601 et seq.) and New York State and City Human Rights laws.
Defendant/third-party plaintiff Constantine Hassapoyannes now moves, by order to show cause, for a preliminary injunction directing the sale of the apartment, and to dismiss the second, third, and fourth causes of action of the complaint. Plaintiff and third-party defendant Jon Schechter each cross-move for summary judgment dismissing the third-party complaint as against them. This decision addresses both the motion and the cross motions.
Background
Plaintiff Merle Hirschmann is the owner of cooperative shares in unit 18J of an apartment building located at 201 East 66th Street, New York, New York. Pursuant to a contract of sale dated April 8, 2004, plaintiff agreed to sell the unit to defendant Constantine Hassapoyannes for $265,000, with a closing set for June 8, 2004. Hassapoyannes claims that he wanted the apart *267 ment because of its proximity to Memorial Sloan Kettering Hospital, where he has been regularly receiving cancer treatments. Hassapoyannes had undergone resection due to primary rectal cancer, and had part of his liver removed due to metastasis of his cancer.
Hassapoyannes interviewed with members of the board of the cooperative apartment building (the board) on May 24, 2004. At the interview were third-party defendants Roberta E. Tarshis, S. Barry Winet, and Rujeanne Bleemer. The board gave him information about the building’s house rules, which prohibited laundry equipment in the apartments. The board members allegedly asked him if he understood the building’s policies and asked if he had any questions or problems, to which he allegedly responded, “No, I think you have answered all my questions.” On May 25, 2004, the board allegedly approved the sale of the apartment shares to Hassapoyannes.
On the day of the closing, Hassapoyannes asked third-party defendant Jon Schechter, the building’s managing agent, if he could install a washer/dryer in the apartment, as a reasonable accommodation for bowel incontinence that resulted from cancer surgery. Schechter then allegedly called Tarshis, who was upset that Hassapoyannes had not revealed at his interview that he wanted his own washing machine. By his attorney, Hassapoyannes then offered to provide an affidavit stating that he would no longer need a washer and would not install it. However, the closing was adjourned until the board’s next meeting on June 15, 2004, during which the board resolved to rescind its approval of the sale. The board believes that Hassapoyannes should have informed the board during the interview that he needed a washing machine in his apartment, and that he therefore “lied” at the interview.
On June 18, 2004, without any explanation, the board notified Hassapoyannes that it did not approve of the sale of the apartment. On June 23, Hassapoyannes filed a complaint with the Department of Housing and Urban Development, Fair Housing Enforcement Center (HUD), claiming discrimination. By a letter dated June 29, 2004, Hassapoyannes’s attorney informed Hirschmann that she could not advertise or promote the sale of her apartment while the HUD complaint was pending, or else Hassapoyannes would consider it a breach of the contract of sale.
Pursuant to 42 USC § 3610 (f), HUD transferred the complaint to the New York State Division of Human Rights *268 (NYSDHR) on July 9, 2004. Before NYSDHR, both the board and Hirschmann argued that Hassapoyannes should have informed the board at the interview that he wanted to install a washing machine.
On August 11, 2004, Hirschmann commenced this action against Hassapoyannes, who then brought a third-party action against the board and Hirschmann.[1] On February 8, 2005, NYS-DHR issued a finding of probable cause that the board had unlawfully discriminated against Hassapoyannes. Hirschmann is now willing to sell the apartment to Hassapoyannes, but the board is unwilling to settle the dispute.
Discussion
Hassapoyannes’s Motion
A. Preliminary Injunction
The Fair Housing Act permits a court to grant a temporary injunction as it deems appropriate, if it finds that a discriminatory housing practice has occurred or is about to occur (42 USC § 3613 [c]). To be entitled to a preliminary injunction, Hassapoyannes must show a likelihood of success on the merits, the danger of irreparable injury in the absence of an injunction, and a balance of the equities in his favor (Fair Hous. in Huntington Comm. Inc. v Town of Huntington, 316 F3d 357, 365 [2d Cir 2003]; W.T. Grant Co. v Srogi, 52 NY2d 496, 517 [1981]).
1. Likelihood of Success
The Fair Housing Act states that it is unlawful to refuse to sell or rent or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of a handicap (42 USC § 3604 [f] [1]). The Fair Housing Act applies to cooperative apartment buildings (see Robinson v 12 Lofts Realty, Inc., 610 F2d 1032, 1036 [2d Cir 1979]).
In the absence of direct evidence of discrimination, Hassapoyannes may establish a prima facie case of housing discrimination using the familiar burden-shifting framework that the United States Supreme Court first articulated in McDonnell Douglas Corp. v Green (411 US 792 [1973]; Mitchell v Shane, 350 F3d 39, 47 [2d Cir 2003]). He must show: (1) membership in a protected class; (2) that he sought and was qualified to rent *269 or purchase the housing; (3) that he was rejected; and (4) that the housing opportunity remained available to other renters or purchasers {ibid.). Once he establishes a prima facie case, the burden then shifts to the board to show a legitimate, nondiscriminatory reason for the challenged decision {ibid.). Regardless of the burden shifting, the “ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff’ (St. Mary’s Honor Center v Hicks, 509 US 502, 507 [1993] [citations omitted]).
Here, Hassapoyannes is likely to establish a prima facie case of housing discrimination. There is sufficient evidence to show that he is in a protected class, i.e., that he has a disability, which the Fair Housing Act defines as “a physical or mental impairment which substantially limits one or more of such person’s major life activities” (42 USC § 3602 [h] [1]). The inability to control one’s bowel movements constitutes a physical impairment (see 24 CFR 100.201 [a] [1]). In this case, Hassapoyannes avers that he soils his trousers, bed sheets, towels, and carpets, even though he wears sanitary pads (diapers) and changes them several times a day (complaint 1Í 7). A jury could reasonably find that his condition therefore substantially limits his major life activities (cf. Workman v Frito-Lay, Inc., 165 F3d 460, 467 [6th Cir 1999] [jury could find that irritable bowel syndrome significantly restricted ability to perform major life activities, as compared to an average healthy person]).
The remaining elements of the prima facie case are not in dispute. The parties do not dispute that Hassapoyannes applied for, and obtained the board’s approval initially, and that the board later withdrew its approval at closing. After the board’s rejection, Hirschmann wanted to keep Hassapoyannes’s deposit and find another buyer for the apartment {see complaint II17). Therefore, Hassapoyannes will likely establish a prima facie case of housing discrimination based on a disability.
In opposition, the board argues that it rejected Hassapoyannes because he did not disclose his disability and his need for a reasonable accommodation at the interview.[2] This argument is unavailing. The regulations of the Fair Housing Act explicitly prohibit any inquiry into whether an applicant for housing has *270 a handicap, or the nature or severity of a handicap (24 CFR 100.202 [c]). As a corollary, the United States Equal Employment Opportunity Commission (EEOC) takes the position that an employer may also not inquire into an applicant’s need for a reasonable accommodation. The EEOC Compliance Manual states, in pertinent part:
“In general, an employer may not ask questions on an application or in an interview about whether an applicant will need reasonable accommodation for a job. This is because these questions are likely to elicit whether the applicant has a disability (generally, only people who have disabilities will need reasonable accommodations)” (ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations, EEOC Notice 915.002 [Oct. 10, 1995], reprinted in 2 BNA EEOC Compliance Manual, No. 290, 902:0072 [Oct. 10, 1995]).
The EEOC’s rationale is clearly persuasive and applicable to the context of housing discrimination.[3] Like the Fair Housing Act, the Americans with Disabilities Act (ADA) expressly forbids an employer from inquiring about whether an applicant has a disability (42 USC § 12112 [d] [2] [A]). The definition of “disability” in the Americans with Disabilities Act is the same as the definition of “handicap” under the Fair Housing Act (compare 42 USC § 12102 [2] [A], with 42 USC § 3602 [h] [1]).
Of course, the board did not, in fact, inquire into Hassapoyannes’s disability at the interview. However, because the Fair Housing Act expressly prohibits inquiry of an individual’s handicap, it is illogical to impose on the applicant a concomitant duty to disclose that handicap. Otherwise, those protections would be circumvented and rendered meaningless. Indeed, in the employment context, “terminating an employee for failure to disclose a physical disability has the same effect as inquiring into the disability before hire” (Lowe v Angelo’s Italian Foods, Inc., 1993 WL 560905, *2, 1993 US Dist LEXIS 18931, *7 [D Kan, Oct. 8, 1993]).[4]
Therefore, the board’s reliance on cases imposing a duty to disclose in the context of fraud is misplaced. None of the cases *271 that the board cited involved a duty to disclose an individual’s disability, or the need for a reasonable accommodation (Sorbaro Co. v Capital Video Corp., 245 AD2d 364 [2d Dept 1997] [defendant fraudulently represented use of lease premises to sell adult materials]; Lopez v Time, Inc., 219 AD2d 569 [1st Dept 1995] [plaintiff not entitled to severance package because she failed to disclose she obtained employment elsewhere]; Post v Xerox Corp., 163 AD2d 908 [4th Dept 1990] [omission of prior unethical conduct in application for company’s job benefits]).
The board also argues that it may inquire into an individual’s handicap to fulfill its fiduciary obligations to its shareholders, citing Laurenti v Water’s Edge Habitat, Inc. (837 F Supp 507 [ED NY 1993]). In Laurenti, the plaintiffs alleged that the board of a cooperative apartment violated the Fair Housing Act by refusing to sublet to a family based on familial status, i.e., because they had four children. However, the family had lied about the status of the mother’s employment, and had lied about the number of occupants, which exceeded the allowable number of persons under the Occupancy Code of the Village of Patchogue. The court denied plaintiffs’ request for an injunction, finding that the board offered a legitimate, nondiscriminatory reason for evicting the sublettors. Laurenti is inapposite, because although the Fair Housing Act prohibits discrimination based on familial status, it does not prohibit inquiry regarding the number of occupants who intend to reside in an apartment. Thus, in Laurenti, the court found that plaintiff failed to demonstrate that discrimination occurred given the board’s claim that its refusal to sublet was based on plaintiffs’ violations of the Occupancy Code and upon plaintiffs’ misrepresentations concerning the number of occupants, which was not protected under the Fair Housing Act. To the extent that the board argues that its fiduciary duties entitle it to inquire into a person’s handicap, the court notes only that its fiduciary duties can never trump the obligation to act lawfully, i.e., without violating the Fair Housing Act.
The fact that the board has allowed other persons with wheelchairs and “emotional support animals” to live in the building is not a defense (cf. Furnco Constr. Corp. v Waters, 438 US 567, 579 [1978] [“A racially balanced work force cannot im *272 munize an employer from liability for specific acts of discrimination”]).
In sum, the board offers no legitimate, nondiscriminatory reason to rebut a prima facie case of housing discrimination. The board’s erroneous understanding of the law, even if in good faith, is not a defense to liability in a discrimination action (Parker v Sony Pictures Entertainment, Inc., 260 F3d 100, 112-113 [2d Cir 2001]). Therefore, Hassapoyannes has established a likelihood of success on the merits.
The likelihood of success of Hassapoyannes’s claims under the New York State and City Human Rights laws (Executive Law § 296 et seq.; Administrative Code of City of NY § 8-101 et seq.) is the same as the analysis of his claim under the Fair Housing Act (see Forrest v Jewish Guild for Blind, 3 NY3d 295, 305 n 3 [2004]). Like the Fair Housing Act, the New York State and City Human Rights laws expressly prohibit an owner of a housing accommodation “to make any record or inquiry in connection with the prospective purchase, rental or lease of such a housing accommodation which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . disability” (Executive Law § 296 [5] [a] [3]; see also Administrative Code § 8-107 [5] [a] [3]).
2. Irreparable Harm
The United States Courts of Appeals for the 9th and 11th Circuits hold that irreparable injury is presumed once a person alleging discrimination has established a violation of the Fair Housing Act (Silver Sage Partners, Ltd. v City of Desert Hot Springs, 251 F3d 814, 826 [9th Cir 2001]; Gresham v Windrush Partners, Ltd., 730 F2d 1417, 1423 [11th Cir 1984]; see also Illinois Bell Tel. Co. v Illinois Commerce Commn., 740 F2d 566, 571 [7th Cir 1984] [traditional showing of irreparable harm not required if statute specifically provides for injunctive relief]). The Second Circuit has avoided the issue (see Fair Hous. in Huntington Comm. Inc., 316 F3d at 365 n 4).
In any event, the record establishes that the apartment is unique due to its proximity to a cancer hospital where Hassapoyannes needs specialized medical care. Thus, money damages would not be an adequate remedy for him if the board allowed Hirschmann to transfer or sell the apartment to a third party during the pendency of the action (cf. Seitzman v Hudson Riv. Assoc., 126 AD2d 211, 214 [1st Dept 1987] [medical doctors established irreparable injury against cooperative board which refused approval for medical office in the same building where *273 doctors lived]). Moreover, “[depriving members of the handicapped community of the right to live where they choose ‘deprives [the handicapped] of much of what makes for human freedom and fulfillment — the ability to form bonds and take part in the life of a community’ ” (Epicenter of Steubenville, Inc. v City of Steubenville, 924 F Supp 845, 853 [SD Ohio 1996], quoting Cleburne v Cleburne Living Center, Inc., 473 US 432, 461 [1985]).
3. Balance of the Equities
The balance of the equities tips in Hassapoyannes’s favor. The injury he would suffer if the injunction were not granted is not redressable in money damages. By contrast, Hirschmann would suffer only the lost opportunity of selling the apartment at this time, which, at most, is an economic injury.
Notwithstanding the above, Hassapoyannes is not entitled to a preliminary injunction at this time because generally, the court cannot grant the ultimate relief that he seeks under the guise of a preliminary injunction (see SportsChannel Am. Assoc. v National Hockey League, 186 AD2d 417, 418 [1st Dept 1992]). “A mandatory injunction should not be granted, absent extraordinary circumstances, where the status quo would be disturbed and the plaintiff would receive the ultimate relief sought, pendente lite” (St. Paul Fire & Mar. Ins. Co. v York Claims Serv., 308 AD2d 347, 349 [1st Dept 2003]; see also WarnerVision Entertainment Inc. v Empire of Carolina, Inc., 101 F3d 259, 262 [2d Cir 1996]). Nor, as a general rule, will the court issue a mandatory preliminary injunction requiring one person to surrender the possession of real estate or other property in dispute to another (see Knower v Atkins, 273 App Div 356 [1st Dept 1948], affd 298 NY 750 [1948]). However, this branch of his motion is denied with leave to renew within 45 days. The record is not clear as to whether this case presents the extraordinary and very rare situation where a mandatory preliminary injunction should be granted.
B. Dismissal of the Complaint
In the second cause of action, Hirschmann seeks a declaration that she did not breach the contract of sale, and that she is entitled to keep Hassapoyannes’s deposit. Because there are questions of fact as to whether the board discriminated against Hassapoyannes, he is not entitled to dismissal of this cause of action as a matter of law.
In the third cause of action, Hirschmann seeks “extra-contractual” damages from Hassapoyannes because he *274 “blocked” her from selling the apartment, in that he filed a housing discrimination complaint, and notified her that he would consider her in breach of the contract of sale if she sold the apartment to another buyer. Damages include the monthly maintenance paid to the cooperative, and damages for “lost opportunity.”
Hassapoyannes has established that this cause of action lacks merit as a matter of law. The only discernible theories of liability against Hassapoyannes that these allegations raise are abuse of process and prima facie tort, both of which cannot be sustained. “While ‘process’ is defined as a direction or demand that one perform or refrain from doing some prescribed act, it is clear that ‘the judicial process must in some manner be involved’ ” (Varela v Investors Ins. Holding Corp., 185 AD2d 309, 311 [2d Dept 1992], affd 81 NY2d 958 [1993] [citations omitted]). Thus, the letter from Hassapoyannes’s attorney directing Hirschmann not to advertise or promote the sale of her apartment during the pendency of the HUD complaint does not constitute process susceptible of abuse. Moreover, no claim for abuse of process can be sustained in the absence of any evidence that Hassapoyannes’s counsel issued process with an ulterior motive to cause harm, or that it was completely devoid of social or economic justification (Greenfield v Schultz, 251 AD2d 67, 67 [1st Dept 1998]). As discussed above, NYSDHR determined that Hassapoyannes had shown probable cause that the board engaged in housing discrimination. As for prima facie tort, “New York courts have consistently refused to allow retaliatory lawsuits based on prima facie tort predicated on the malicious institution of a prior civil action” (Curiano v Suozzi, 63 NY2d 113, 118 [1984]).
The fourth cause of action, for attorneys’ fees and exemplary damages, is equally without merit. “Under the general rule, attorney’s fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule” (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]). Hirschmann does not cite any agreement or statute that would entitle her to legal fees from Hassapoyannes. Nor does she articulate any valid basis to impose exemplary damages against him. The fact that Hassapoyannes did not disclose his handicap or his request for a reasonable accommodation does not constitute fraudulent concealment, but rather reflects the valid exercise of his rights under the Fair Housing Act.
*275 Therefore, this cause of action is dismissed.
Plaintiffs Cross Motion for Summary Judgment
The standards for summary judgment are well settled.
“[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [citations omitted]).
Hirschmann argues that the third-party complaint should be dismissed as against her, because she did not discriminate against Hassapoyannes in any way (Hirschmann affidavit 1f 18). Once the board withdrew its approval, Hirschmann directed her attorney to tender the deposit back to Hassapoyannes, who refused it (id. 1Í 13). In her own words, Hirschmann never balked at selling her apartment to him (id. U 21).
The complaint does not specifically state in what manner Hirschmann has discriminated against him, but rather lumps Hirschmann together with the board. It is undisputed that Hirschmann had originally agreed to sell her shares to Hassapoyannes, and so the complaint fails to state a cause of action against Hirschmann for violation of the Fair Housing Act. Though Hassapoyannes argues that Hirschmann’s lawsuit “advanced” the unlawful discrimination, the act of commencing a lawsuit is not a discriminatory housing practice (see 42 USC § 3602 [f]; § 3604).
Therefore, the first, second, third, sixth, and seventh causes of action of the third-party complaint are dismissed as against her. The fourth cause of action, for tortious interference, is clearly directed against the board, and not Hirschmann. Therefore, this cause of action is also dismissed as against her. However, the fifth cause of action, for breach of contract against her, cannot be dismissed as a matter of law. Whether Hirschmann was entitled to cancel the contract of sale depends upon whether the board’s decision to withdraw its approval was a discriminatory act.
*276 The remaining branches of the cross motion are otherwise denied. The remainder of the cross motion does not seek any affirmative relief, but rather opposes Hassapoyannes’s motion for a preliminary injunction and for dismissal of Hirschmann’s complaint against him.
Defendants’ Cross Motion
Defendants argue that Jon Schechter has no liability for housing discrimination because he allegedly acted as an agent for the board. Defendants argue that, under principles of agency, an agent is not liable for the actions of a disclosed principal (see Degenshein affidavit at 6 n 1). Schechter states that he first met Hassapoyannes when he arrived for a closing at Schechter’s office on June 8, 2004 (Schechter affidavit 11 2). Schechter called the board’s president when Hassapoyannes allegedly announced that he was disabled and requested installation of a washer in the apartment (id. 11 5). Schechter told Hassapoyannes that the board’s president wanted to adjourn the closing until the board’s next meeting, which Schechter later attended (id. 1i 7).
In opposition, Hassapoyannes argues that Schechter is liable for housing discrimination because he participated in the board’s discussions at its board meeting.
Summary judgment is premature. Because Schechter attended the meeting during which the board decided to withdraw its approval, discovery is necessary to reveal whether Schechter had any authority to influence the board in any manner, or if he was nothing more than a conduit or avenue of communication between the board and Hassapoyannes (see Sassower v Field, 752 F Supp 1182, 1187 [SD NY 1990]). The cross motion is therefore denied.
Accordingly, it is ordered that the motion, by order to show cause, of defendant/third-party plaintiff Constantine Hassapoyannes, is granted to the extent that the third and fourth causes of action of the complaint are dismissed, and is otherwise denied, except that, with respect to the injunction, leave to renew within 45 days is granted; and it is further ordered that the cross motion of plaintiff/third-party defendant Merle Hirschmann is granted to the extent that the first, second, third, fourth, sixth, and seventh causes of action of the third-party complaint are dismissed as against her, and the cross motion is otherwise denied; and it is further ordered that the cross motion by defendant Jon Schechter is denied.

. Under the Fair Housing Act, Hassapoyannes is entitled to commence a civil action without regard to the status of any discrimination complaint filed with HUD, except where there is already a conciliation agreement in place, or when an administrative law judge has already commenced a hearing on the record (42 USC § 3613 [a] [2], [3]).

. Thus, whether the washer/dryer is a reasonable accommodation for Hassapoyannes’s disability is not at issue in this case. Even if the installation of the washer/dryer was neither reasonable, nor an accommodation, the board could not reject Hassapoyannes for requesting that accommodation.

. The interpretations of the EEOC Compliance Manual “are ‘entitled to respect . . . only to the extent that [they] have the power to persuade’ ” (United States v City of New York, 359 F3d 83, 93 [2d Cir 2004], quoting Christensen v Harris County, 529 US 576, 587 [2000]).

. In Lowe, the plaintiff alleged, among other things, that her employer terminated her position in inventory control and purchasing based on a dis *271 ability. The defendants justified the termination on the ground that plaintiff was not candid about her ability to perform the job. The court agreed with plaintiff that termination based on her failure to disclose a disability would constitute discrimination.