OPINION OF THE COURT
Emily Jane Goodman, J.
Defendant and third-party plaintiff Constantine Hassapoyannes moves, pursuant to CPLR 3212, for summary judgment on his third-party complaint and counterclaims against third-party defendants 20166 Tenants Corp., Roberta E. Tarshis, Jon Schechter, S. Barry Winet, Ellen Herman and Rujeanne Bleemer, individually and as members of the board of directors of 20166 Tenants Corp. (collectively, the Coop), and seller, Merle Hirschmann. Hassapoyannes also seeks a hearing to determine the amount of damages and legal fees due to him. Finally, Hassapoyannes moves to dismiss Hirschmann’s complaint against him.
The background of this matter is described in detail in the decision of this court, dated December 1, 2005, which, among other things, denied Hassapoyannes’ motion for a preliminary injunction directing the sale of the apartment to him, and granted Hirschmann’s cross motion to dismiss the first, second, third, fourth, sixth and seventh causes of action in the third-party complaint as to her. Only Hassapoyannes’ fifth cause of action for breach of contract remains against Hirschmann. (See Hirschmann v Hassapoyannes, 11 Misc 3d 265 [Sup Ct, NY County 2005].) The facts will not be repeated here except to the extent necessary.
Initially, the board of directors of 20166 Tenants Corp. (the Coop Board) approved the sale of apartment 18J to Hassapoyannes. On the day of the closing, Hassapoyannes asked third-party defendant Jon Schechter, the managing agent for the building, if he could install a washer/dryer in the apartment, as a reasonable accommodation for a serious malady resulting from cancer surgery and which necessitated frequent laundering of bed linens and personal undergarments. Schechter contacted one of the members of the Coop Board to discuss the matter, and the closing was delayed. Ultimately, the Coop Board decided to withdraw its approval of Hassapoyannes’ request to purchase the apartment.
*1016 Hassapoyannes contends that the Coop Board’s decision to rescind its approval was unlawful, because it was based upon his revelation of the disability and his need for a reasonable accommodation. The Coop does not dispute that Hassapoyannes has made out a prima facie case of discrimination under the Fair Housing Act, or under the New York State or New York City Human Rights Laws. Accordingly, this issue is conceded, and in any event, Hassapoyannes has met his burden to demonstrate a prima facie case.[1]
The Coop contends that summary judgment must be denied because there are questions of fact regarding its defense that the Coop had a legitimate nondiscriminatory reason for withdrawing their approval of the sale — i.e., that Hassapoyannes was untruthful at his interview when he said that he understood, and had no problem with, the Coop’s rules, which included a prohibition on the installation of washing machines in individual apartments. Further, to bolster the argument that issues of fact exist for the jury, the Coop points to other examples of Hassapoyannes’ purported lack of veracity, which occurred either after the Coop’s decision to withdraw its approval or were statements not known to, or considered by, the Coop when it made its decision.
The Fair Housing Act prohibits the refusal to sell or to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of a handicap. (42 USC § 3604 [f] [1]; see also Executive Law § 296 [2-a] [a]; Administra *1017 tive Code of City of NY § 8-107 [5] [a] [1].) As this court has already noted in its decision dated December 1, 2005, the Fair Housing Act applies to cooperative apartments. (See Robinson v 12 Lofts Realty, Inc., 610 F2d 1032, 1036 [2d Cir 1979].) Discrimination under the Fair Housing Act includes the failure or refusal “to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.” (42 USC § 3604 [f] [3] [B]; 24 CFR 100.204.) Reasonable accommodations might, in some cases, excuse actions that would otherwise constitute a violation of a lease or cooperative rules. (See Starret City, Inc. v Adamson, NYLJ, Apr. 12, 1995, at 30, col 5 [Civ Ct, Kings County, Gould, J.] [tenant’s installation of a freezer without the landlord’s permission does not constitute a breach of the lease when that freezer constitutes a reasonable accommodation to the tenant’s “panic disorder”]; Crossroads Apts. Assoc. v LeBoo, 152 Misc 2d 830 [Rochester City Ct 1991] [issue raised as to whether tenant could be evicted for keeping a cat in his apartment in violation of the no-pet clause in his lease, or whether he was entitled to keep the cat as an accommodation under the Fair Housing Act].)
Hassapoyannes’ claims under the New York State and New York City Human Rights Laws (Executive Law § 296 et seq.; Administrative Code of City of NY § 8-101 et seq.) are analyzed in the same manner as claims under the Fair Housing Act (see Forrest v Jewish Guild for the Blind, 3 NY3d 295, 305 n 3 [2004]). Further, like the Fair Housing Act, the New York State and New York City Human Rights Laws expressly prohibit an owner of a housing accommodation “to make any record or inquiry in connection with the prospective purchase, rental or lease of such a housing accommodation which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . disability” (Executive Law § 296 [5] [a] [3]; see also Administrative Code § 8-107 [5] [a] [3]).
As noted above, the Coop contends that it did not withdraw its approval of the sale because of Hassapoyannes’ disability or because he had requested a reasonable accommodation for his disability. Rather, the Coop contends that it acted based upon what it perceived as Hassapoyannes’ lack of veracity at his interview. The Coop claims that, when it realized that Hassapoyannes had withheld the information that he would need a washer/dryer because of incontinence, it pondered whether he had also been dishonest about other issues, such as whether he *1018 intended to use the apartment as a pied-á-terre. Further, the Coop contends that, in light of its rule prohibiting washing machines in individual apartments (although some apartments had them), it was Hassapoyannes’ responsibility to raise the issue with the Coop at the interview.
Absent limited exceptions, the regulations promulgated pursuant to the Fair Housing Act prohibit making an inquiry regarding whether a person has a disability or inquiring as to the nature or severity of that disability. (24 CFR 100.202;[2] see also Executive Law § 296 [2-a] [c].) If the Coop Board may not inquire about a disability, it should not be permitted to penalize a prospective purchaser for failing to volunteer information about that disability, as that would defeat the purpose and policy of the law.
In the related area of employment discrimination law, under the Americans with Disabilities Act, an employer is not permitted to make any preemployment inquiry as to whether an individual has a disability or the nature or severity of a disability. (42 USC § 12112 [d] [2] [A].) Further, an employer may not even conduct a medical examination until after an offer of employment is made, and may not condition the offer on the results of the examination unless all employees are subject to the examination and it is job related and consistent with business necessity. (42 USC § 12112 [d] [3], [4].) As this court noted in its prior decision, in the context of employment discrimination, “terminating an employee for failure to disclose a physical disability has the same effect as inquiring into the disability.” (Lowe v Angelo’s Italian Foods, Inc., 1993 WL 560905, *2, 1993 US Dist LEXIS 18931, *7 [D Kan, Oct. 8, 1993].) Furthermore, under New York State law, where an employer is prohibited by statute from making certain inquiries of a prospective employee, the employee may not be penalized for failing to accurately answer the proscribed questions. For example, under Executive Law § 296 (16), an employer is not permitted to inquire into an employee’s arrest when the underlying charge has been terminated in favor of the individual, unless the employer is a government entity regulating deadly weapons or where the job is for employment as a police or peace officer. Therefore, the *1019 employee’s failure to disclose that arrest and even his misstatements regarding the arrest on an employment application do not constitute misconduct which would disqualify the employee from obtaining unemployment insurance. (See Matter of Ruggiero [Edwards & Sons — Commissioner of Labor], 263 AD2d 554 [3d Dept 1999] ,)[3]
Citing Matter of Custodio v Popolizio (139 Misc 2d 391 [Sup Ct, NY County 1987], affd 138 AD2d 270 [1st Dept 1988]), the Coop argues that an inquiry concerning disability is permissible where the tenant could have a detrimental impact on other tenants. In Custodio, where the potential tenant was suffering from mental illness, the court concluded that although the housing authority could not exclude the Custodio family from the housing project because Mrs. Custodio was mentally ill, it had the obligation to exclude the tenant “if her conduct is such as will cause substantial disturbance to the other tenants” (id. at 392). Thus, the court held that it would be permissible to inquire concerning her disability. Certainly, the Coop does not suggest that Hassapoyannes’ disability is likely to result in conduct detrimental to its residents that could justify excluding him from the Coop and therefore, the case is inapposite.
The Coop also argues that inquiries are permitted where the information is necessary for a legitimate purpose, and that, in light of the potential plumbing problems associated with the installation of washing machines (notwithstanding those apartments that have them), it was necessary for the Coop Board to know that Hassapoyannes would request a reasonable accommodation of a washer/dryer in his apartment. The issue at hand, however, is whether the approval of Hassapoyannes’ application to purchase an apartment may be rescinded because he asked for such a reasonable accommodation after his interview, but before the closing. Hassapoyannes is not questioning the validity of the Coop’s rule, nor questioning that before permission to install a washer/dryer as a reasonable accommodation is granted, plans for the installation of the equipment would have to be reviewed by appropriate experts. The flaw in the Coop’s reasoning is its conclusion that Hassapoyannes was untruthful based only upon his failure to disclose his disability until after *1020 his interview — even though the law protected him from being compelled to do so. The Coop’s speculation that Hassapoyannes would install an illegal washing machine is belied by the fact that he sought an accommodation to install a washer/dryer prior to closing, and is, in any event, based upon the Coop’s improper belief that Hassapoyannes was obligated to disclose his disability at the interview. The Coop fails to raise a triable issue of fact as to whether it had a legitimate business reason to know about the request for the accommodation prior to its determination of whether it would approve Hassapoyannes’ application. In fact, if a cooperative was permitted to question an applicant concerning disabilities prior to approving an application, or was permitted to punish an applicant for not divulging a disability at that time, obstacles are created to determining whether a rejection resulted from unlawful discrimination.[4] Hassapoyannes’ failure to come forward with information concerning his need for a reasonable accommodation at the interview, when the law protected him from being compelled to do so, does not constitute a valid basis for withdrawing approval of his purchase application. Accordingly, the Coop’s decision to withdraw its approval of Hassapoyannes’ application to purchase apartment 18J violated fair housing guarantees pursuant to New York City, New York State and federal law. (See Administrative Code § 8-101 et seq.; Executive Law § 296 et seq.; 42 USC § 3604.) Summary judgment is granted on Hassapoyannes’ second cause of action for wrongful refusal to permit the sale of apartment 18J to him, and on his sixth cause of action for a permanent injunction directing the Coop Board to reinstate its approval of his application to purchase apartment 18J and to permit the sale to go forward.
With respect to the remaining causes of action of the third-party complaint against the Coop, the first cause of action for failure to grant a reasonable accommodation is denied as premature, and it is unnecessary to reach the third cause of action for retaliation or the fourth cause of action for tortious interference with a contract. With respect to the seventh cause of action, a hearing is directed with respect to Hassapoyannes’ request for attorneys’ fees, as well as damages against 20166 Tenants Corp., pursuant to Administrative Code § 8-101 et seq., Executive Law § 296 et seq., and 42 USC § 3613 (c) (2). However, *1021 the court denies Hassapoyannes’ motion for summary judgment on the seventh cause of action, with leave to renew, to the extent that he seeks to hold the individual board members personally liable. This aspect of the motion was inadequately addressed and inadequately supported by Hassapoyannes and, surprisingly, was not addressed at all by the third-party defendants.
With respect to Hassapoyannes’ motion for summary judgment on his fifth cause of action for breach of contract against Hirschmann, Hassapoyannes has submitted no evidence that would indicate that Hirschmann was in any way involved in or encouraged the Coop Board’s action. Although this court has ruled that the Coop Board’s withdrawal of its approval of Hassapoyannes’ application was in violation of federal, state, and local law, Hirschmann could not go forward with the sale of her apartment without the Coop Board’s approved. Thus, summary judgment is denied on the fifth cause of action.
Hassapoyannes also moves to dismiss the remaining causes of action in the main complaint — the first cause of action for a declaratory judgment that the contract is cancelled and that plaintiff has a right to remarket and attempt to sell the apartment, and the second cause of action for a declaration directing the escrow agent to release the contract deposit to plaintiff. In light of this court’s ruling directing the Coop Board to reinstate its approval of Hassapoyannes’ purchase application, the remaining causes of action will be rendered moot upon closing. Accordingly, Hassapoyannes’ motion to dismiss the complaint is denied as premature.
Accordingly, it is hereby ordered that the motion for summary judgment of defendant and third-party plaintiff Constantine Hassapoyannes is denied as to the first, third, and fourth causes of action; and it is further ordered that the motion for summary judgment is granted as to the second cause of action of the third-party complaint to the extent that the Coop’s decision to rescind the approval of the purchase application of Constantine Hassapoyannes violated the Administrative Code of the City of New York, the Executive Law of the State of New York, and the Fair Housing Act; and it is further ordered that the motion for summary judgment is granted as to the sixth cause of action for a preliminary and permanent injunction in the third-party complaint to the extent that third-party defendants 20166 Tenants Corp., Roberta E. Tarshis, S. Barry Winet, Ellen Herman and Rujeanne Bleemer are directed to reinstate the approval of Constantine Hassapoyannes’ application to purchase apartment *1022 18J and the parties are directed to proceed, forthwith, to closing; and it is further ordered that summary judgment is granted on the seventh cause of action in the third-party complaint to the extent that the amount of damages and attorneys’ fees as against 20166 Tenants Corp. are set down for a hearing, but is denied, with leave to renew, to the extent that third-party plaintiff seeks to hold the individual board members personally liable (if the motion is renewed, Hassapoyannes should submit specific excerpts of examination before trial transcripts in support thereof).

. In the absence of direct evidence of discrimination, a prima facie case of housing discrimination is established by using the burden-shifting framework first articulated in McDonnell Douglas Corp. v Green (411 US 792 [1973]; Mitchell v Shane, 350 F3d 39, 47 [2d Cir 2003]). Here, Hassapoyannes has demonstrated that: (1) he was in a protected class; (2) he sought and was qualified to purchase the housing; (3) he was rejected; and (4) the housing opportunity remained available to other purchasers (id.). Hassapoyannes is in a protected class because he has a disability, which the Fair Housing Act defines as “a physical or mental impairment which substantially limits one or more of such person’s major life activities” (42 USC § 3602 [h] [1]). The inability to control one’s bowel movements constitutes a physical impairment (see 24 CFR 100.201 [a] [1]). Hassapoyannes has shown that his condition substantially limits his ability to work, and that his doctor recommended that he retire as a result of his condition (see Workman v Frito-Lay, Inc., 165 F3d 460, 467 [6th Cir 1999] [jury could find that irritable bowel syndrome significantly restricted ability to perform major life activities, as compared to an average healthy person]). Hassapoyannes has also demonstrated he applied for, and obtained, the Coop Board’s approval initially, and that the Coop Board later withdrew its approval at closing. Because the analysis is the same under State and City Human Rights Laws, the court need not discuss the issue further.

. For example, 24 CFR 100.202 permits an inquiry if it is made to all applicants and is related to the applicant’s ability to meet the requirements of tenancy, or to determine whether the applicant is entitled to handicapped housing or a priority thereto or whether the applicant is a drug user or convicted seller.

. The cases cited by the Coop, Obabueki v International Bus. Mach. Corp. (145 F Supp 2d 371 [SD NY 2001]) and Kravit v Delta Air Lines, Inc. (1992 WL 390236, 1992 US Dist LEXIS 19087 [ED NY, Dec. 4, 1992]), involving employment inquiries, are inapposite as neither case involved Executive Law § 296 (16).

. Under legislation pending in the City Council (Council of City of NY Intro No. 119, proposing amendment to Administrative Code tit 8 [Feb. 15, 2006]), cooperatives would be required to state the reason for the rejection of a purchaser.